[No. S010142. Dec. 20, 1990.]

EMMA ROJO et al., Plaintiffs and Appellants, v.
ERWIN H. KLIGER et al., Defendants and Respondents.

## COUNSEL

Patten, Faith & Sandford and Lorraine Grindstaff for Plaintiffs and Appellants.

Joseph Posner, David C. Anton, Margaret E. Roeckl, Bird, Marella, Boxer, Wolpert & Matz, Robert J. Rose, Mark T. Drooks, Julius LeVonne Chambers, Patrick O. Patterson, Bill Lann Lee, Theodore M. Shaw, Christine A. Littleton, Jon W. Davidson, John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, Marian M. Johnston and Louis Verdugo, Jr., Deputy Attorneys General, as Amici Curiae on behalf of Plaintiffs and Appellants.

Knapp, Petersen & Clarke, Andre E. Jardini, Alan C. Arnall, Thomas H. Ott, Bryan H. Baumeister and David J. Cohen for Defendants and Respondents.

Paul, Hastings, Janofsky & Walker, Paul Grossman, Lawrence A. Michaels, Jennifer A. Glazer, Proskauer, Rose Goetz & Mendelsohn, Jeffrey A. Berman and Steven G. Drapkin as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**PANELLI, J.**—We granted review in this case to determine whether the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.)[1] (hereafter FEHA or act) provides the exclusive remedy for injuries relating to sex discrimination in employment; whether an employee must exhaust the administrative remedies under the FEHA as a prerequisite to pursuing a civil action; and whether sex discrimination in employment may give rise to a claim of wrongful discharge in contravention of public policy. We conclude that the FEHA does not supplant other state laws, including claims under the common law, relating to employment discrimination; that an employee need not exhaust the administrative process under the act before resort to judicial relief for nonstatutory causes of action; and that sex discrimination

---

[1] Unless otherwise indicated, all further statutory references are to the Government Code.

in employment may support a claim of tortious discharge in contravention of public policy.

## I. FACTS

Plaintiffs Emma Rojo and Teresa Maloney were employed as assistants by defendants Erwin H. Kliger, a practicing physician, and Erwin H. Kliger, M.D., a medical corporation (hereafter referred to collectively as defendant). In August 1986, plaintiffs filed a complaint against defendant for violations of the FEHA and intentional infliction of emotional distress. Plaintiffs alleged that during the term of their employment they had been subjected by defendant to sexually harassing remarks and demands for sexual favors which had ultimately forced them to leave their employment.[2]

Defendant answered, denied the allegations and asserted various affirmative defenses. He then moved for summary judgment on the grounds that the FEHA constituted plaintiffs' exclusive remedy and that plaintiffs had failed to exhaust their administrative remedies under the act. Plaintiffs opposed the motion, arguing that the FEHA does not supplant other state law remedies, including common law claims, relating to discrimination in employment, and that pursuit of the administrative remedy is not a condition precedent to judicial relief. They also requested leave to amend their complaint to assert causes of action for assault and battery and tortious discharge in contravention of public policy, among other causes of action. The trial court granted defendant's motion and entered summary judgment in his favor.

The Court of Appeal reversed. It held the FEHA does not preempt or preclude other state law claims relating to employment discrimination. It further held a victim of sex discrimination is not required to pursue the FEHA administrative remedy except with respect to claims under the act. Accordingly, the court concluded plaintiffs could proceed with their suit and seek recovery under any applicable theory independent of the FEHA, but could not state a cause of action under section 12940 because they did not exhaust their administrative remedies under the act. Finally, the court ruled that plaintiffs' allegations of sexual harassment and discrimination would support a claim of tortious discharge in contravention of public policy.

---

[2]The complaint alleged, inter alia, that Kliger committed various acts against plaintiffs. As to Emma Rojo, these included grabbing and touching her breasts, and kissing and French-kissing her; as to Teresa Maloney, the acts alleged included blocking her exit from his office, forcibly grabbing her groin, rubbing her legs, and grabbing her hand, forcing her to feel his groin.

## II. Discussion

### A. *The FEHA*

As our resolution of the important questions raised in this case turns in large part on the language and purposes of the FEHA, we briefly review the salient features of that act.

The California Fair Employment Practices Act (FEPA) was enacted in 1959 (former Lab. Code, § 1410 et seq.) and recodified in 1980 in conjunction with the Rumford Fair Housing Act (former Health & Saf. Code, § 35700 et seq.) to form the FEHA. (Stats. 1980, ch. 992, § 4, p. 3140 et seq.) The law establishes that freedom from job discrimination on specified grounds, including sex, is a civil right. (§ 12921.) It declares that such discrimination is against public policy (§ 12920) and an unlawful employment practice (§ 12940). (*Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 213 [185 Cal.Rptr. 270, 649 P.2d 912].) The statute creates two administrative bodies: the Department of Fair Employment and Housing (Department) (§ 12901), whose function is to investigate, conciliate, and seek redress of claimed discrimination (§ 12930), and the Fair Employment and Housing Commission (Commission) (§ 12903), which performs adjudicatory and rulemaking functions (§ 12935). An aggrieved person may file a complaint with the Department (§ 12960), which must promptly investigate (§ 12963). If the Department deems a claim valid, it seeks to resolve the matter—in confidence—by conference, conciliation, and persuasion. (§ 12963.7.) If that fails or seems inappropriate, the Department may issue an accusation to be heard by the Commission. (§§ 12965, subd. (a), 12969.) The Department acts as prosecutor on the accusation and argues the complainant's case before the Commission. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1383-1384 [241 Cal.Rptr. 67, 743 P.2d 1323].)

If no accusation is issued within 150 days after the filing of a complaint, or if the Department earlier determines not to prosecute the case and the matter is not otherwise resolved, the Department must give the complainant a "right to sue" letter. Only then may that person bring a civil suit "under this part."[3] (§ 12965, subd. (b); *Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra*, 43 Cal.3d at p. 1384; *Commodore Home Systems, Inc.* v. *Superior Court, supra*, 32 Cal.3d 211, 213-214.)

The broad goal of the FEHA is set forth at section 12920, which states in pertinent part: "It is hereby declared as the public policy of this state that it

---

[3] "This part" refers to part 2.8 of title 2, division 3 (§ 12900 et seq.), which comprises the FEHA.

is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex or age."

### B. *FEHA Preclusion of Common Law Claims*

 The first question we address is whether the FEHA provides the exclusive remedy for injuries arising from discrimination in employment.[4] In addressing this issue we begin, as always, with the language of the statute itself. "[A] court is to construe a statute so as to effectuate the purpose of the law." (*White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 681 [183 Cal.Rptr. 520, 646 P.2d 191] [internal quotation marks omitted].) However, "[w]hen statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

 The meaning of the FEHA is clear in this regard. The act expressly disclaims any intent to repeal other state laws relating to employment discrimination. Subdivision (a) of section 12993 provides: "The provisions of this part shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this part shall be deemed to repeal any of the provisions of the Civil Rights Law or of *any other law of this state relating to discrimination* because of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex, or age." (Italics added.)

---

[4] Although the FEHA cites harassment as an unlawful employment practice separate from discrimination (§ 12940, subd. (h)), the regulations and Commission decisions recognize that sexual harassment is a form of sex discrimination in employment. (See Cal. Code Regs., tit. 2, §§ 7286.5, subd. (f)(3), 7287.6, subd. (b), 7291.1, subd. (f)(1); *Dept. Fair Emp. & Hous.* v. *Del Mar Avionics* (1985) No. 85-19, FEHC Precedential Decisions 1984-1985, CEB 16, p. 18; *Dept. Fair Emp. & Hous.* v. *Ambylou Enterprises, Inc.* (1982) No. 82-06, FEHC Precedential Decisions 1982-1983, CEB 3, pp. 5-6.) We note, however, that as an employer of fewer than five persons, defendant is subject to the prohibitions of the FEHA with respect only to harassment. (§§ 12926, subd. (c), 12940, subd. (h).)

The Commission has defined sexual harassment as "verbal, physical, or sexual behavior directed at any individual because of her, or his, gender." (*Ambylou Enterprises, Inc., supra,* FEHC Dec. No. 82-06, CEB 3, p. 6; see also *Peralta Community College Dist.* v. *Fair Employment & Housing Com., ante,* p. 45, fn. 2 [276 Cal.Rptr. 114, 801 P.2d 357].) Concerning harassment as discrimination, the Commission has stated: "Sexual or racial harassment deprives its victim of a discrimination-free work environment, within the meaning of the Act and our regulations, when the harassment creates an intimidating, oppressive, hostile or offensive work environment or otherwise interferes with the victim's emotional well-being or her ability to perform her work." (*Del Mar Avionics, supra,* FEHC Dec. No. 85-19, CEB 16, p. 18; see also *Meritor Savings Bank* v. *Vinson* (1986) 477 U.S. 57, 64 [91 L.Ed.2d 49, 57-58, 106 S.Ct. 2399]; *Froyd* v. *Cook* (E.D.Cal. 1988) 681 F.Supp. 669, 673, fn. 11; see generally, MacKinnon, Sexual Harassment of Working Women (Yale Univ. Press 1979).)

It is settled that the "law" of this state includes the common law as well as the Constitution and the codes. (Code Civ. Proc., §§ 1895, 1899; *Victory Oil Co.* v. *Hancock Oil Co.* (1954) 125 Cal.App.2d 222, 229 [270 P.2d 604].) ■ " 'The code establishes the law of this state respecting the subjects to which it relates'; but this . . . does not mean that there is no law with respect to such subjects except that embodied in the code . . . . [W]here the code is silent, the common law governs." (*Estate of Apple* (1885) 66 Cal. 432, 434 [6 P. 7]; accord *Estate of Elizalde* (1920) 182 Cal. 427, 432-433 [188 P. 560]; *Cole* v. *Rush* (1955) 45 Cal.2d 345, 356 [289 P.2d 450, 54 A.L.R.2d 1137]; *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 815 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].)

It is equally settled that the common law of this state provides any number of remedial theories to compensate for injuries "relating to discrimination" (§ 12993, subd. (a)). *Brown* v. *Superior Court* (1984) 37 Cal.3d 477 [208 Cal.Rptr. 724, 691 P.2d 272] is illustrative. There, the plaintiff filed a civil suit alleging a statutory cause of action for discharge on grounds of race and common law causes of action for emotional distress and wrongful discharge. Each of the three claims was based on the same factual allegations regarding liability and damages. ■ "[E]mployment discrimination cases," we observed, "by their very nature, involve several causes of action arising from the same set of facts. *A responsible attorney handling an employment discrimination case must plead a variety of statutory, tort and contract causes of action in order to fully protect the interests of his or her client.* [Fn. omitted.]" (*Id.* at p. 486, italics added.) Although the common law theories do not per se "relate to discrimination," they are nonetheless a standard part of a plaintiff's arsenal in a discrimination case. (See generally Montgomery, *Sexual Harassment in the Workplace: A Practitioner's Guide to Tort Actions* (1980) 10 Golden Gate L.Rev. 879.)

Indeed, this court has recognized on many occasions that both administrative and judicial remedies are available to victims of employment discrimination. ■ While holding, for example, in *Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d 1379, that punitive damages may not be awarded in an administrative adjudication under the act, we stressed that "in appropriate cases a complainant can seek punitive damages by filing an independent civil action alleging tort causes of action either with or without an FEHA count." (*Id.* at p. 1403; accord *Commodore Home Systems, Inc.* v. *Superior Court, supra,* 32 Cal.3d at p. 220; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 498 [86 Cal.Rptr. 88, 468 P.2d 216].) ■ As we explained in *State Personnel Bd.* v. *Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 431 [217 Cal.Rptr. 16, 703 P.2d 354]: "The FEHA was meant to supplement, not supplant or be supplanted by, existing antidiscrimination remedies, in order to give employees the

maximum opportunity to vindicate their civil rights against discrimination
. . . . (§ 12993, subd. (a).)"

By expressly disclaiming a purpose to repeal other applicable state laws
(§ 12993, subd. (a)), we believe the Legislature has manifested an intent to
amplify, not abrogate, an employee's common law remedies for injuries
relating to employment discrimination. Had the Legislature intended other-
wise, it plainly knew how to do so. (See, e.g., Lab. Code, §§ 3600, 3601
[workers' compensation law declared the "exclusive remedy" for work-re-
lated injuries]; see generally *Shoemaker* v. *Myers, ante*, p. 1 [276 Cal.Rptr.
303, 801 P.2d 1054].)

Defendant advances several arguments in an effort to rebut the clear
import of the statutory language and the prior decisions of this court. None
of these, upon examination, proves to be persuasive. ■ Defendant first
contends that the use of the term "repeal" in section 12993, subdivision (a)
reveals a legislative intent to preserve only *statutory* provisions, not com-
mon law theories. Defendant cites no authority, however, to show that
"repeal" is ordinarily used with reference only to statutes. On the contrary,
the term is generally considered to be all inclusive: "[R]epeal ordinarily
means revocation, rescission, abrogation, or destruction . . . ." (*Rains* v.
*County of Contra Costa* (1951) 37 Cal.2d 263, 265 [231 P.2d 55]; see Web-
ster's New Internat. Dict. (2d ed. 1935) p. 2111, col. 3.) Numerous cases
and no less an authority than Sutherland have spoken in terms of "repeal"
with reference to the common law. (See, e.g., *Weaver* v. *Bank of California*
(1963) 59 Cal.2d 428, 437 [30 Cal.Rptr. 4, 380 P.2d 644] ["Assuming the
purpose of the statute to be the repeal of the common-law presumption of
damages, . . ."]; *Valdes* v. *Cory* (1983) 139 Cal.App.3d 773, 780 [189
Cal.Rptr. 212] ["[I]t is elementary that the Legislature has power . . .
expressly to amend or repeal both the common law and existing statutes"];
*White* v. *Church* (1986) 185 Cal.App.3d 627, 631 [231 Cal.Rptr. 565] [Elec.
Code, § 17113 "repealed the common law of California that votes cast for a
deceased candidate were invalid"]; *Frost* v. *Geernaert* (1988) 200
Cal.App.3d 1104, 1108 [246 Cal.Rptr. 440] ["[T]here is a presumption a
statute does not, by implication, repeal the common law."]; 3 Sutherland,
Statutory Construction (4th ed. 1986) § 61.03, p. 95 ["The repeal of a
common law rule may be evidenced by various other . . . aids of statutory
interpretation."].)

■ The savings clause set forth in section 12993, subdivision (a) is
expressly phrased in the broadest of terms; it disclaims any intent to "re-
peal"—a term used in conjunction with both statutes and common law—
any other "laws of this state"—a phrase that also encompasses statutory
and common law. There is no merit, therefore, to defendant's contention

that a more narrow meaning of section 12993, subdivision (a) may be inferred from the text.

Defendant also cites subdivision (c) of section 12993 (hereafter subdivision (c) or section 12993(c)). Subdivision (c) states: "While it is the intention of the Legislature to occupy the field of regulation of discrimination in employment and housing encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state, nothing contained in this part shall be construed, in any manner or way, to limit or restrict the application of Section 51 of the Civil Code."[5] This provision, defendant contends, expresses the legislative intent to supersede all preexisting state laws except Civil Code section 51. Were it otherwise, he argues, the Civil Code section 51 savings clause would be unnecessary and mere surplusage. We disagree.

As written, subdivision (c) is ambiguous. First, the phrase "occupy the field" may convey displacement either of all other law, without limitation (see, e.g., *Pacific Scene, Inc.* v. *Penasquitos, Inc.* (1988) 46 Cal.3d 407, 411-413 [250 Cal.Rptr. 651, 758 P.2d 1182] [statutory scheme displaced antecedent common law remedies]; *Justus* v. *Atchison* (1977) 19 Cal.3d 564, 574-575 [139 Cal.Rptr. 97, 565 P.2d 122] [new statutory cause of action precluded extrastatutory relief], disapproved on other grounds in *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 171 [216 Cal.Rptr. 661, 703 P.2d 1]), or, alternatively, of only local law by a higher law (see *Rice* v. *Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 230 [91 L.Ed. 1447, 1459, 67 S.Ct. 1146]; cf. *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 290-291 [219 Cal.Rptr. 467, 707 P.2d 840]; see also *Froyd* v. *Cook, supra*, 681 F.Supp. 669, 670, fn. 2, 673-674).

Second, the stated legislative intent to occupy the field *"exclusive of* all other laws banning discrimination . . . by any city, city and county [etc.]" (§ 12993(c), italics added) can be read to mean "not including" local laws (see, e.g., Webster's New Internat. Dict. (2d ed. 1935) p. 890, col. 3), thereby removing them from the preemptive effect of the statute, or, as the parties assume, "to the exclusion of" local laws, thereby preempting such laws. Further, "laws banning discrimination . . . *by* any city [etc.]" (italics added) can mean laws that prohibit discrimination *on the part of* any city, etc., or, as the parties assume, laws that are *enacted by* any city or other

---

[5] Civil Code section 51, the Unruh Civil Rights Act, provides in relevant part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

local entity. Faced with these ambiguities, we turn to the legislative history of the act.[6]

As noted earlier, the FEHA is the product of a legislative amalgamation of two separate acts, the FEPA (former Lab. Code, § 1410 et seq.), which applied exclusively to employment discrimination, and the Rumford Fair Housing Act (former Health & Saf. Code, § 35700 et seq.) (hereafter fair housing act), which banned discrimination in housing. Thus, subdivision (c) is derived from a blending of two analogous provisions. Former Labor Code section 1431, the original FEPA "repeal" section, stated a legislative intent to preserve other applicable state laws and to displace local regulation of employment discrimination, with a one-year grace period for pending or undetermined enforcement proceedings brought thereunder.[7] ■ No specific mention was made of Civil Code section 51, because none was needed: the Unruh Civil Rights Act has no application to employment discrimination. (*Alcorn* v. *Anbro Engineering, Inc., supra*, 2 Cal.3d at p. 500; *Isbister* v. *Boys' Club of Santa Cruz, Inc.* (1985) 40 Cal.3d 72, 83, fn. 12 [219 Cal.Rptr. 150, 707 P.2d 212].)

■ The equivalent fair housing provision (former Health & Saf. Code, § 35743) was phrased quite differently, and it is there we find the origins of the ambiguous phrases in subdivision (c). The provision stated: "As it is the intention of the Legislature to *occupy the whole field* of regulation encompassed by the provisions of this part, the regulation by law of discrimination in housing contained in this part *shall be exclusive of* all other laws banning discrimination in housing by any city, city and county, county, or other political subdivision of the State. *Nothing contained in this part shall be construed to, in any manner or way, limit or restrict the application of Section 51 of the Civil Code.*" (Italics added.)

---

[6]The following analysis is largely based on the study by Oppenheimer, *Employment Discrimination and Wrongful Discharge: Does the California Fair Employment and Housing Act Displace Common Law Remedies?* (1989) 23 U.S.F. L.Rev. 145, 174-177, as well as the amicus curiae brief of the N.A.A.C.P. Legal Defense and Educational Fund, Inc.

[7]Former Labor Code section 1431 (later amended and renumbered as former Lab. Code, § 1432 [Stats. 1967, ch. 1506, § 3, pp. 3574-3575]) provided:

"The provisions of this part shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this act shall be deemed to repeal any of the provisions of the Civil Rights Law or of any other law of this State relating to discrimination because of race, religious creed, color, national origin or ancestry.

"Nothing contained in this act shall be deemed to repeal or affect the provisions of any ordinance relating to such discrimination in effect in any city, city and county, or county at the time this act becomes effective, insofar as proceedings theretofore commenced under such ordinance or ordinances remain pending and undetermined. The respective administrative bodies then vested with the power and authority to enforce such ordinance or ordinances shall continue to have such power and authority, with no ouster or impairment of jurisdiction, until such pending proceedings are completed, but in no event beyond one year after the effective date of this act." (Stats. 1959, ch. 121, § 1, pp. 2004-2005.)

Read in context of the fair housing act, the meaning of the ambiguous subdivision (c) phrases is clear: consistent with the Legislature's intent to occupy the field of housing discrimination regulation, the fair housing act was to exclude all other *local* laws banning housing discrimination, but was not to be construed to limit the application of Civil Code section 51. Although the fair housing act, like the FEPA, thus preempted only local laws banning discrimination, its reference to Civil Code section 51 nevertheless was not surplusage because the Unruh Civil Rights Act, among other things, prohibits discrimination in housing and provides for local enforcement by city or district attorneys. (Civ. Code, § 52, subd. (c).) Thus, while disallowing local *regulation* of housing discrimination, the fair housing act carefully preserved the option under the Unruh Civil Rights Act of local *enforcement.*

In 1978, the Fair Employment Practices Commission (FEPC) proposed and the Legislature enacted a series of procedural and "clean up" amendments to the FEPA that included replacing former Labor Code section 1432. The original text of former Labor Code section 1432, with its one-year grace period for proceedings under local regulations (see fn. 7, *ante*), was clearly out of date. In its place the Legislature adopted a provision nearly identical to its counterpart in the fair housing act, the aforementioned former Health and Safety Code section 35743, whose parallel language—including the stated intent to "occupy the field" and the Civil Code section 51 savings clause—served as its pattern.[8] When in 1980 the fair housing act and the FEPA were combined to form the FEHA, former Labor Code section 1432 and former Health and Safety Code section 35743 were merged to form present section 12993(c).

As the foregoing history demonstrates, both of the predecessor statutes to section 12993(c) indicate a legislative intent to preempt only local law. The reference to Civil Code section 51 in subdivision (c), therefore, provides no support for the view that the FEHA was intended to displace *state* laws relating to employment discrimination. Its purpose, rather, was to retain local enforcement authority against housing discrimination. Thus understood, subdivision (c) is harmonized with section 12993, subdivision (a),

---

[8] Former Labor Code section 1432, as amended in 1978, read: "(a) The provisions of this part shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this part shall be deemed to repeal any of the provisions of the Civil Rights Law or any other law of this state relating to discrimination on the bases enumerated in this part. [¶] . . . [¶] (c) While it is the intention of the Legislature to occupy the field of regulation of discrimination in employment encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment by any city, city and county, county, or other political subdivision of the state, nothing contained in this part shall be construed, in any manner or way, to limit or restrict the application of Section 51 of the Civil Code." (Stats. 1978, ch. 1254, § 19, pp. 4077-4078.)

which, as indicated, expresses a legislative intent not to displace other applicable state laws.

Defendant also relies on the "new right—exclusive remedy" rule of statutory construction and its counterpart, the doctrine of "preexisting right—cumulative remedies," to infer a legislative intent to cover the field of employment discrimination. ■ As a general rule, where a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive. (*Flores* v. *Los Angeles Turf Club* (1961) 55 Cal.2d 736, 746-747 [13 Cal.Rptr. 201, 361 P.2d 921]; see *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290, 301 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015].) But where a statutory remedy is provided for a preexisting common law right, the newer remedy is generally considered to be cumulative, and the older remedy may be pursued at the plaintiff's election. (*Flores, supra,* at p. 747; *Hentzel, supra,* at pp. 301, 303; see generally 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, §§ 7-8, pp. 38-40.)

■ Defendant's reliance on the above-stated rules of statutory interpretation is misplaced. First, as noted earlier, in this respect the pertinent language of the FEHA is plain and its meaning unmistakable: the act expressly disclaims any intent to repeal other state laws relating to discrimination, legislative or otherwise. Where statutory language is clear, a court need not and should not rely upon artificial canons of construction. (*Solberg* v. *Superior Court, supra,* 19 Cal.3d at p. 198.)

Second, as discussed above, we have long recognized that the common law provides a variety of means independent of the FEHA or its predecessor, the FEPA, to redress injuries arising from discrimination in employment. (*Brown* v. *Superior Court, supra,* 37 Cal.3d at p. 486; *Commodore Home Systems, Inc.* v. *Superior Court, supra,* 32 Cal.3d at p. 220; *Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d at pp. 498-500.) In asserting otherwise, defendant relies on the statement in *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 490 [156 Cal.Rptr. 14, 595 P.2d 592], that "the prohibitions on employment discrimination contained in the [FEHA] are in no sense declaratory of preexisting common law doctrine but rather include areas and subject matters of legislative innovation, creating new limitations on an employer's right to hire, promote or discharge its employees." Read in context, however, the import of this statement is simply that the scope of the FEHA is limited to the categories specifically enumerated in the statute, some of which did not exist before enactment of the act; thus, unlike the Unruh Civil Rights Act, which "represented a codification of the common law principle barring *all* discrimination by public accommodations," the FEHA bars discrimination only on the

grounds specified, which do not include sexual orientation. (*Ibid.*, italics in original.)

Finally, we reject defendant's argument that the FEHA is such a "general and comprehensive legislation" as to imply a legislative intent to displace or preclude employees' common law rights. ■ The general rule is that statutes do not supplant the common law unless it appears that the Legislature intended to cover the entire subject. (*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285 [216 Cal.Rptr. 438, 702 P.2d 596].) "'[G]eneral and comprehensive legislation, where course of conduct, parties, things affected, limitations and exceptions are minutely described, indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter.' [Citation.]" (*Ibid.* [nonjudicial foreclosure of deeds of trust]; accord *Pacific Scene, Inc.* v. *Penasquitos, Inc., supra,* 46 Cal.3d 407, 411 [corporate dissolution]; see *Justus* v. *Atchison, supra,* 19 Cal.3d 564, 574-575 [recovery for wrongful death]; *Flores* v. *Los Angeles Turf Club, supra,* 55 Cal.2d at p. 746 [legalized horse racing and wagering].)

■ Although this and other courts have on occasion described the FEHA as a "comprehensive scheme" for combating employment discrimination (e.g., *Brown* v. *Superior Court, supra,* 37 Cal.3d at p. 485; *Snipes* v. *City of Bakersfield* (1983) 145 Cal.App.3d 861, 865, 868 [193 Cal.Rptr. 760]), in context the statement served to expand, not restrict, the plaintiff's rights; the exclusivity of the FEHA was not at issue. (See *Brown* v. *Superior Court, supra,* at p. 487 [FEHA venue statute controls when FEHA claim is joined with non-FEHA claim arising out of same facts]; *State Personnel Bd.* v. *Fair Employment & Housing Com., supra,* 39 Cal.3d at p. 431 [FEHA covers state civil service employees]; *Snipes* v. *City of Bakersfield, supra,* at pp. 868-869 [actions under FEHA are exempt from general Tort Claims Act requirements].) An examination of the act supports the view it lacks the comprehensiveness necessary to infer a legislative intent to displace all preexisting or alternative remedies for employment discrimination. For example, with the exception of cases involving harassment, the FEHA applies only to "employers" of five or more persons (§§ 12926, subd. (c), 12940, subd. (h)), it excludes religious associations or nonprofit corporations (§ 12926, subd. (c)), and it does not protect against discrimination on grounds of sexual orientation (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co., supra,* 24 Cal.3d at p. 489). As a remedial scheme, the act also has its limitations in that the Commission is not authorized to award either punitive or general compensatory damages. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1404; *Peralta Community College Dist.* v. *Fair Employment & Housing Com., supra, ante,* at pp. 55-57, 60.) Although conference, conciliation and persuasion, together with the

available administrative remedies of injunctive relief, upgrading and reinstatement, with or without back pay, may prove effectual in many cases, in others the employer's conduct or the employee's injuries may be such that judicial remedies, including punitive and compensatory damages, can provide the only adequate form of relief.

Employment discrimination may, of course, result in injury entitling an employee to damages in a civil action under the act. (§ 12965, subd. (b); *Commodore Home Systems, Inc.* v. *Superior Court, supra,* 32 Cal.3d at pp. 220-221.) The same conduct, however, may also simultaneously cause additional injury outside the ambit of statutory protection. For example, as alleged in this case, an employer's discriminatory actions may constitute assault and battery or outrageous conduct redressable under a theory of intentional infliction of emotional distress.

Defendant relies on several Court of Appeal and federal decisions (applying California law) that have held the FEHA provides the exclusive remedy for injuries relating to discrimination in employment. Illustrative of one line of cases is *Ficalora* v. *Lockheed Corp.* (1987) 193 Cal.App.3d 489 [238 Cal.Rptr. 360]. In *Ficalora,* an employee sued her former employer for retaliatory discharge for filing a sex discrimination complaint. The trial court granted the employer summary judgment on grounds the employee had no common law remedy. The Court of Appeal affirmed. The court held that the employee's sole cause of action was the statutory cause of action: "Even if a common law cause of action existed before retaliation was identified in the [FEHA] as an unlawful employment practice, the Legislature has made clear its intent to 'occupy the field of regulation of discrimination in employment' by virtue of the FEHA. (§ 12993, subd. (c).)" (*Id.* at p. 492; accord *Robinson* v. *Hewlett-Packard Corp.* (1986) 183 Cal.App.3d 1108, 1124-1125 [228 Cal.Rptr. 591] [racial discrimination].)

What the *Ficalora* v. *Lockheed Corp.* court overlooked in its analysis is that the intent expressed in subdivision (c) is not simply to "occupy the field," but to occupy the field *"exclusive of all other laws . . . by any city, city and county, county, or other political subdivision of the state, . . ."* (§ 12993(c), italics added.) As shown, the intent was to preempt local antidiscrimination law, not state law. Indeed, as previously noted, the FEHA elsewhere expressly disclaims any intent to repeal other applicable state laws, statutory or otherwise. (§ 12993, subd. (a); see *Froyd* v. *Cook, supra,* 681 F.Supp. 669, 674.)

Illustrative of a second line of cases is *Strauss* v. *A. L. Randall Co.* (1983) 144 Cal.App.3d 514 [194 Cal.Rptr. 520]. In *Strauss,* an age discrimination case, the employee filed a civil suit alleging a common law cause of action

for wrongful discharge in violation of public policy. The Court of Appeal affirmed the judgment of dismissal following an order sustaining the defendant's demurrer. Asserting that no common law remedy for age discrimination predated the FEPA, the court concluded that the Legislature, in creating a new right, intended the statutory remedy to be exclusive. (*Id.* at p. 520.) " 'Where a new right is created by statute, the party aggrieved by its violation is confined to the statutory remedy if one is provided . . . .' [Citations.]" (*Id.* at pp. 518-519.)[9]

In determining legislative intent, however, *Strauss* and its progeny needlessly invoked the "new right—exclusive remedy" doctrine of interpretation. Because the FEHA, like its predecessor the FEPA, expressly disclaims any intent to displace other relevant state laws, no resort to interpretative aids is required and the existence vel non of a preexisting cause of action for the particular discrimination is irrelevant. While the FEHA conferred certain new rights and created new remedies, its purpose was not to narrow, but to expand the rights and remedies available to victims of discrimination. (§§ 12993, 12920.) Under the act, plaintiffs are free to seek relief for injuries arising from discrimination in employment under *any* state law, without limitation.

In sum, we hold that the FEHA does not displace any causes of action and remedies that are otherwise available to plaintiffs.[10]

## C. *Exhaustion of FEHA Administrative Remedies*

■■■ The second question we address is whether, notwithstanding the availability of common law remedies for injuries relating to employment

---

[9] Following *Strauss*, a number of federal decisions have likewise held that because no cause of action for age discrimination predated the FEPA, the statutory remedy supplants any common law cause of action based on the discrimination. (E.g., *Salgado* v. *Atlantic Richfield Co.* (9th Cir. 1987) 823 F.2d 1322, 1327; *Mahoney* v. *Crocker Nat. Bank* (N.D.Cal. 1983) 571 F.Supp. 287, 293-294; see also *Harlan* v. *Sohio Petroleum* (N.D.Cal. 1988) 677 F.Supp. 1021, 1031; *Real* v. *Continental Group, Inc.* (N.D.Cal. 1986) 627 F.Supp. 434, 445.) Some courts have extended the *Strauss* rationale to apply to other kinds of discrimination. (E.g., *Hudson* v. *Moore Business Forms, Inc.* (N.D.Cal. 1985) 609 F.Supp. 467, 474 [sex discrimination]; *Baker* v. *Kaiser Aluminum and Chemical Corp.* (N.D.Cal. 1984) 608 F.Supp. 1315, 1322 [religion].)

[10] In so holding, we express no opinion concerning the result in either *Ficalora* v. *Lockheed Corp., supra,* 193 Cal.App.3d 489, or *Strauss* v. *A. L. Randall Co., supra,* 144 Cal.App.3d 514, as neither the retaliation nor age discrimination cause of action pleaded in those cases is before us.

Since the parties have not raised the issue, we likewise do not decide whether any of the common law causes of action are barred by the exclusive remedy provisions of the workers' compensation law (Lab. Code, §§ 3600, 3601, 3602). (Cf. *Shoemaker* v. *Myers, supra, ante,* p. 1.)

discrimination, employees are required to exhaust the FEHA administrative process before seeking judicial relief.

 Neither party disputes that, with respect to a cause of action under the act, exhaustion of administrative remedies is required before initiating a private civil action. The rule is that where a right is given and a remedy provided by statute, the remedy so provided must ordinarily be pursued. (*People* v. *Craycroft* (1852) 2 Cal. 243, 244.) The FEHA, moreover, by its terms implies exhaustion is required, and we have so assumed.

Section 12965, subdivision (b) provides that if the Department does not issue an accusation within 150 days after the filing of a complaint, or if the Department earlier determines that no accusation will issue, it shall promptly issue a notice indicating that the complainant "may bring a civil action under this part . . . within one year from the date of such notice." Commenting in prior decisions on the availability of judicial relief under this provision, we have stated that the right-to-sue letter is a prerequisite to judicial action. (See *Commodore Home Systems, Inc.* v. *Superior Court, supra*, 32 Cal.3d at p. 218; *State Personnel Bd.* v. *Fair Employment & Housing Com., supra*, 39 Cal.3d at p. 433, fn. 11.) Relying on such statements, other courts have held that exhaustion of FEHA administrative remedies is a prerequisite to judicial relief on a statutory cause of action. (See *Yurick* v. *Superior Court* (1989) 209 Cal.App.3d 1116, 1123 [257 Cal.Rptr. 665]; *Robinson* v. *Department of Fair Employment & Housing* (1987) 192 Cal.App.3d 1414, 1416 [239 Cal.Rptr. 908]; *Miller* v. *United Airlines, Inc.* (1985) 174 Cal.App.3d 878, 890 [220 Cal.Rptr. 684]; *Myers* v. *Mobil Oil Corp.* (1985) 172 Cal.App.3d 1059, 1063 [218 Cal.Rptr. 630]; *Snipes* v. *City of Bakersfield, supra*, 145 Cal.App.3d at p. 866.)

We agree that exhaustion of the FEHA administrative remedy is a precondition to bringing a civil suit *on a statutory cause of action*. In cases appropriate for administrative resolution, the exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation (see *Yurick* v. *Superior Court, supra*, 209 Cal.App.3d at p. 1123), as well as the salutory goals of easing the burden on the court system, maximizing the use of administrative agency expertise and capability to order and monitor corrective measures, and providing a more economical and less formal means of resolving the dispute (see *McKee* v. *Bell-Carter Olive Co.* (1986) 186 Cal.App.3d 1230, 1244-1245 [231 Cal.Rptr. 304]). By contrast, in those cases appropriate for judicial resolution, as where the facts support a claim for compensatory or punitive damages, the exhaustion requirement may nevertheless lead to settlement and serve to eliminate the unlawful practice or mitigate damages and, in any event, is not an impediment to civil suit, in

that the Department's practice evidently is to issue a right-to-sue letter (§ 12965) at the employee's request as a matter of course (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d at pp. 1401-1402; see, e.g., *Baker* v. *Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057, 1060 [257 Cal.Rptr. 768]; *Stephens* v. *Coldwell Banker Commercial Group, Inc.* (1988) 199 Cal.App.3d 1394, 1399 [245 Cal.Rptr. 606]).[11]

Because, however, our prior decisions have been concerned with the procedures and remedies available to a litigant bringing a *statutory* cause of action "under this part" (§ 12965, subd. (b)), they are authority only for the narrow proposition that the FEHA administrative process must be pursued with respect to the specific rights and remedies enumerated in the act. Whether an aggrieved employee must exhaust administrative remedies before seeking damages on nonstatutory grounds remains an open question.

Citing *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715], *George Arakelian Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1985) 40 Cal.3d 654 [221 Cal.Rptr. 488, 710 P.2d 288], and related cases, defendant relies on the rule that "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira, supra,* 17 Cal.2d at p. 292; accord *George Arakelian Farms, Inc., supra,* at pp. 661-662.) As the cited cases illustrate, however, this oft-quoted rule speaks only to the need to exhaust administrative remedies provided for a statutory right and does not govern rights and remedies outside the legislative scheme. (See generally 3 Witkin, Cal. Procedure, Actions, *supra,* § 234, at pp. 264-265.)

*Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d 280, has been described as the seminal California case establishing the exhaustion doctrine. (Comment, *Exhaustion of Administrative Remedies in California* (1968) 56 Cal.L.Rev. 1061.) At issue in *Abelleira* was whether employers who objected to the award of employee benefits under the California Unemployment Insurance Act could seek judicial relief before completing the appeal process under this act. Observing that the Unemployment Insurance Act contained a complete administrative procedure, including an original proceeding and two appeals (17 Cal.2d at p. 291), this court held that under the circumstances, "exhaustion of the administrative remedy is a jurisdic-

---

[11] According to the director of the Department, if a complainant requests a right-to-sue letter in order to bring a civil suit, current Department policy is to issue the letter only after the Department has invited the respondent to make settlement offers and settlement is not achieved. (Letter of June 9, 1989, from the director of the Department to the Chief Justice of the Supreme Court in support of the petition for review.)

tional prerequisite to resort to the courts" (*id*. at p. 293). In *George Arakelian Farms, Inc.* v. *Agricultural Labor Relations Bd., supra*, 40 Cal.3d 654, the Agricultural Labor Relations Board certified the United Farm Workers as the employee's bargaining representative after summarily dismissing the employer's objections and rejecting as untimely its request for review. Observing that the employer neither explained its late request nor sought relief from the late filing, we held judicial review of its election objections was barred by its unexcused failure to exhaust the administrative remedies. (*Id*. at p. 663; see also *United States* v. *Superior Court* (1941) 19 Cal.2d 189, 194 [120 P.2d 26]; *County of Contra Costa* v. *State of California* (1986) 177 Cal.App.3d 62, 72-73 [222 Cal.Rptr. 750].)

■■■ As Witkin explains: "The administrative tribunal is created by law to adjudicate the issue sought to be presented to the court. The claim or 'cause of action' is within the special jurisdiction of the administrative tribunal, and the courts may act only to *review* the final administrative determination. If a court allowed a suit to be maintained prior to such final determination, it would be interfering with the subject matter jurisdiction of another tribunal." (3 Witkin, Cal. Procedure, Actions, *supra*, § 234, at p. 265, italics in original.)

■■■ Defendant, however, argues that the policy considerations underlying the exhaustion doctrine justify extending the requirement to related constitutional and common law claims not specifically within the agency's jurisdiction. He cites *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410] (hereafter *Westlake*), involving an excluded physician's failure to pursue internal hospital remedies before filing a civil suit for damages, where we summarized these policy concerns as follows: "In the first place, even if a plaintiff no longer wishes to be either reinstated or admitted to the organization, an exhaustion of remedies requirement serves the salutary function of eliminating or mitigating damages. If an organization is given the opportunity quickly to determine through the operation of its internal procedure that it has committed error, it may be able to minimize, and sometimes eliminate, any monetary injury to the plaintiff by immediately reversing its initial decision and affording the aggrieved party all membership rights . . . . [¶] Moreover, by insisting upon exhaustion even in these circumstances, courts accord recognition to the 'expertise' of the organization's quasi-judicial tribunal, permitting it to adjudicate the merits of the plaintiff's claim in the first instance. [Citation omitted.] Finally, even if the absence of an internal damage remedy makes ultimate resort to the courts inevitable [citation omitted], the prior administrative proceeding will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review." (*Id*. at p. 476.)

 Thus, as explained in *Westlake, supra*, 17 Cal.3d 465, exhaustion of administrative remedies furthers a number of important societal and governmental interests, including: (1) bolstering administrative autonomy; (2) permitting the agency to resolve factual issues, apply its expertise and exercise statutorily delegated remedies; (3) mitigating damages; and (4) promoting judicial economy.

We agree the exhaustion doctrine, when applicable, serves important policy considerations. The issue before us, however, is not the merits of the doctrine, but whether in the first instance the doctrine applies to the case at hand. On this point, *Westlake* —involving exhaustion of a private association's internal remedies—is not determinative. As we stated in *Westlake*, "From the earliest decisions reviewing actions of voluntary private associations, . . . our courts have recognized the applicability of the exhaustion of remedies doctrine in this context." (17 Cal.3d at p. 474, citing, e.g., *Levy v. Magnolia Lodge, I.O.O.F.* (1895) 110 Cal. 297, 307-308 [42 P. 887], and *Robinson v. Templar Lodge, I.O.O.F.* (1897) 117 Cal. 370, 375-376 [49 P. 170], both cases disapproved on other grounds in *Westlake, supra*, at p. 479.)

The "context" to which *Westlake* properly applies is where the party or entity whose "quasi-judicial" determination is challenged—be it hospital, voluntary private or professional association, or public entity—has provided an internal remedy. (See, e.g., *Holderby v. Internat. Union etc. Engrs.* (1955) 45 Cal.2d 843, 846 [291 P.2d 463] [labor union]; *Pinsker v. Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 557 [116 Cal.Rptr. 245, 526 P.2d 253] [professional society]; *Robinson v. Templar Lodge, I.O.O.F., supra*, 117 Cal. 370 [fraternal organization]; *Levy v. Magnolia Lodge, I.O.O.F., supra*, 110 Cal. 297 [same]; *City of Fresno v. Superior Court* (1987) 188 Cal.App.3d 1484, 1490-1491 [234 Cal.Rptr. 136] [city]; *Edgren v. Regents of University of California* (1984) 158 Cal.App.3d 515 [205 Cal.Rptr. 6] [university]; *Logan v. Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 123-124 [185 Cal.Rptr. 878] [state-funded agency]; *Holder v. California Paralyzed Veterans Assn.* (1980) 114 Cal.App.3d 155 [170 Cal.Rptr. 455] [veterans association].)

The reason for the exhaustion requirement in this context is plain. As we stated in *Pinsker v. Pacific Coast Society of Orthodontists, supra*, 12 Cal.3d at page 557: "[W]e believe as a matter of policy that the association itself should in the first instance pass on the merits of an individual's application rather than shift this burden to the courts. For courts to undertake the task 'routinely in every such case constitutes both an intrusion into the internal affairs of [private associations] and an unwise burden on judicial administration of the courts.' [Citation.]"

Though *Westlake, supra*, 17 Cal.3d 465, concerned the exhaustion of private internal remedies, many courts have nevertheless relied on its reasoning to require exhaustion of "external" administrative remedies in a variety of public contexts. In so doing, the courts—albeit with little, or no, analysis—have expressly or implicitly determined that the administrative agency possesses a specialized and specific body of expertise in a field that particularly equips it to handle the subject matter of the dispute. Typical of these is *Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953 [201 Cal.Rptr. 379], involving a physician's class action for equitable relief and damages arising out of defendant insurers' alleged charging of excessive malpractice insurance premium rates. As the court there stated: "Whether the exhaustion doctrine is to be applied in a particular instance because of its extreme utility to the court and the agency itself to initially engage administrative expertise, or is to be held inapplicable because of the alleged inadequacy of the administrative remedy, has been determined by a qualitative analysis on a case-by-case basis with concentration on whether a paramount need for agency expertise outweighs other factors." (*Id*. at p. 981; see *McKee* v. *Bell-Carter Olive Co., supra*, 186 Cal.App.3d 1230, 1245 [all the factors pulling toward exhaustion "reflect recognition that many agencies have developed special expertise within that area the agency has been created to serve"].)

In *Karlin* v. *Zalta, supra*, 154 Cal.App.3d 953, the court held plaintiffs were required to exhaust their administrative remedies under the McBride Act (Ins. Code, §§ 1850-1860.3). Citing the "factual complexities" of medical malpractice insurance ratemaking and the McBride Act's "pervasive and self-contained system of administrative procedure" for monitoring rates and relevant market conditions, the court determined the excessive-rates issue was a matter "singularly within the technical competence of the Insurance Commissioner through the enlistment of agency resources." (154 Cal.App.3d at p. 983.) In these circumstances, the court held, "it is indispensable that the expertise of the insurance commissioner and the agency's staff be initially engaged to make such review." (*Id*. at p. 986; accord *Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307 [159 Cal.Rptr. 416]; see *Yamaha Motor Corp.* v. *Superior Court* (1986) 185 Cal.App.3d 1232, 1242 [230 Cal.Rptr. 382] [New Motor Vehicle Board has "particular expertise" in making factual determinations regarding good cause to modify franchises]; *Morton* v. *Hollywood Park, Inc.* (1977) 73 Cal.App.3d 248 [139 Cal.Rptr. 584] [Horse Racing Board must determine whether its rules authorized plaintiff's ejection].)

Unlike in the cited cases, the FEHA does not have a "pervasive and self-contained system of administrative procedure" (*Karlin* v. *Zalta, supra*, 154 Cal.App.3d at p. 983) for general regulation or monitoring of employer-employee relations so as to assess or prevent discrimination or related

wrongs in the employment context, nor are the factual issues in an employment discrimination case of a complex or technical nature beyond the usual competence of the judicial system. Rather, a judge or jury is fully capable of determining whether discrimination has occurred. With all due respect to the efficiency and expertise the Department and Commission bring to bear in investigating and determining statutory discrimination cases, and the salutory effect they have on the settlement and disposition of such cases, these are not cases having such a paramount need for specialized agency fact-finding expertise as to require exhaustion of administrative remedies before permitting an aggrieved person to pursue his or her related nonstatutory claims and remedies in court. Requiring exhaustion as to nonstatutory claims, on the other hand, would either lead to routine issuance of right-to-sue letters, thus nullifying the requirement, or, alternatively, burden the Department and Commission with the investigation and determination of issues beyond their jurisdiction and special expertise, limit the resources available for the resolution of cases within the scope of the act, raise complex issues of collateral estoppel or res judicata, and ultimately have no beneficial impact on the judicial system, in that the case in any event must still enter the "judicial pipeline," a result the exhaustion doctrine was in part intended to avert (*McKee* v. *Bell-Carter Olive Co., supra,* 186 Cal.App.3d at p. 1245).

We conclude, therefore, that although an employee must exhaust the FEHA administrative remedy before bringing suit on a cause of action under the act or seeking the relief provided therein, exhaustion is not required before filing a civil action for damages alleging nonstatutory causes of action.[12] An employee, of course, may elect to waive the statutory cause of action and remedies, and proceed directly to court on the common law claims (see *Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d 493, 500, fn. 7); alternatively, the employee may pursue both the administrative and the judicial avenues, either sequentially (e.g., *Watson* v. *Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1277-1278 [261 Cal.Rptr. 204]; *Monge* v. *Superior Court* (1986) 176 Cal.App.3d 503, 507 [222 Cal.Rptr. 64]) or simultaneously, in the latter case amending his or her complaint to join the FEHA cause of action once the Department has issued the right-to-sue letter (e.g., *Brown* v. *Superior Court, supra,* 37 Cal.3d at p. 481).

D. *Tortious Discharge Against Public Policy*

■ Finally, we address defendant's contention that the Court of Appeal erred in concluding that plaintiffs may amend their complaint to plead a cause of action for wrongful discharge in contravention of public policy.

---

[12] The Commission, we observe, is in agreement with this conclusion, as evidenced in its amicus curiae brief urging that exhaustion is not required.

In *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373] (hereafter *Foley*), this court recently reaffirmed the viability of a tort action where an employer's discharge of an employee contravenes the dictates of fundamental public policy. (*Id.* at pp. 665-669; see *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176-177 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314] (hereafter *Tameny*); *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184, 188-189 [344 P.2d 25].) Though we did not decide in *Foley* whether a statutory or constitutional basis for the policy must exist, we did stress that the policy must be "fundamental" and "public" in nature, i.e., one "which inures to the benefit of the public at large rather than to a particular employer or employee." (47 Cal.3d at p. 669.)

Plaintiffs assert that they were continually subjected to sexual harassment and demands for sexual favors by defendant, and that their refusal to tolerate that harassment or acquiesce in those demands resulted in the wrongful discharge of Ms. Maloney and the constructive wrongful discharge of Ms. Rojo. Plaintiffs further assert that a fundamental public policy against sex discrimination in the workplace may be found in article I, section 8 of the California Constitution (hereafter article I, section 8), which provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

Defendant advances several arguments against recognition of plaintiffs' wrongful discharge claims. He contends that the "comprehensive" remedial scheme for combating employment discrimination established by the FEHA either precludes independent common law claims or renders such claims unnecessary and redundant. This argument we considered and rejected in part B of the preceding discussion.

Defendant also vigorously opposes the proposition that a fundamental public policy against sex discrimination in employment may be found in article I, section 8, or indeed in any other statutory or constitutional provision of this state. Citing *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 8 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351], defendant asserts that the constitutional provision applies only to "state action" and has no application to private sector employers.[13] Contrary to defendant's assertion, we have previously assumed that article I, section 8 covers private as well as

---

[13] *Sail'er Inn, Inc.*, which concerned the forerunner to article I, section 8 (Cal. Const., former art. XX, § 18), held: "Section 18 constitutes a restraint upon the law-making power of the state, and legislative enactments contrary to its provisions are void." (5 Cal.3d at p. 8.) Only state action was at issue.

state action (*Commodore Home Systems, Inc.* v. *Superior Court, supra*, 32 Cal.3d at p. 220 [dictum]; cf. *Wilkinson* v. *Times Mirror Corp.* (1989) 215 Cal.App.3d 1034, 1040-1044 [264 Cal.Rptr. 194] [constitutional right of privacy limits private as well as governmental conduct]; *Luck* v. *Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 1, 19 [267 Cal.Rptr. 618] [same]), an assumption the Legislature evidently shares (see Bus. & Prof. Code, § 16721 [recognizing that certain business practices denigrate the "fundamental constitutional principles" against discrimination]). For our purposes here, however, whether article I, section 8 applies exclusively to state action is largely irrelevant; the provision unquestionably reflects a fundamental *public policy* against discrimination in employment—public or private—on account of sex. (Cf. *James* v. *Marinship Corp.* (1944) 25 Cal.2d 721, 740 [155 P.2d 329, 160 A.L.R. 900] ["Although the [Fourteenth and Fifteenth Amendments] have been said to apply to state action rather than to private action, they nevertheless evidence a definite national policy against discrimination because of race or color."]; accord *Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 471 [20 Cal.Rptr. 609, 370 P.2d 313]; *Winchell* v. *English* (1976) 62 Cal.App.3d 125, 128 [133 Cal.Rptr. 20]; see *Petermann* v. *International Brotherhood of Teamsters, supra,* 174 Cal.App.2d 184, 188 [defining "public policy"].) Regardless of the precise scope of its application, article I, section 8 is declaratory of this state's fundamental public policy against sex discrimination, including sexual harassment, which, as noted, is merely one form of sex discrimination (see fn. 4, *ante*).

The public policy against sex discrimination and sexual harassment in employment, moreover, is plainly one that "inures to the benefit of the public at large rather than to a particular employer or employee." (*Foley, supra,* 47 Cal.3d at p. 669.) No extensive discussion is needed to establish the fundamental *public* interest in a workplace free from the pernicious influence of sexism. So long as it exists, we are *all* demeaned. As section 12920 states: "It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment . . . foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance, and substantially and adversely affects the interest of employees, employers, and the public in general."

In sum, defendant's discharges of plaintiffs on the grounds alleged contravened a fundamental, substantial public policy embodied in the state Constitution, a public policy, by whatever measure, that was " 'firmly established' " (*Foley, supra,* 47 Cal.3d at pp. 668, 670, fn. 11) at the time plaintiffs were discharged. Consequently, whatever the parameters of the *Tameny-*

*Foley* cause of action for wrongful discharge, on the facts alleged plaintiffs were entitled to leave to amend to plead a cause of action for wrongful discharge in violation of public policy.

In light of our conclusion, we reject defendant's argument that *Tameny* claims should be limited to situations where, as a condition of employment, the employer "coerces" an employee to commit an act that violates public policy, or "restrains" an employee from exercising a fundamental right, privilege or obligation. The contention is without merit. Although decided in the factual contexts of coercion (*Tameny, supra*, 27 Cal.3d 167) and restraint (*Foley, supra*, 47 Cal.3d 654), neither *Tameny* nor *Foley* excludes wrongful discharge claims based solely on sex discrimination or sexual harassment. To the contrary, the cases strongly imply that an action for wrongful discharge will lie when, as here, the basis of the discharge contravenes a fundamental public policy. (See *Foley, supra*, at p. 669; *Tameny, supra*, at pp. 176-177; see also *Commodore Home Systems, Inc.* v. *Superior Court, supra*, 32 Cal.3d at p. 220.)

Plaintiffs' allegations, in any event, easily satisfy defendant's own criteria. Plaintiffs assert, in essence, that they were terminated for refusing to engage in conduct that violated fundamental public policy, to wit, nonconsensual sexual acts. (See, e.g., Pen. Code, § 243.4.) They also assert, in effect, that they were discharged in retaliation for attempting to exercise a fundamental right—the right to be free from sexual assault and harassment. Under either theory, plaintiffs, in short, should have been granted leave to amend to plead a cause of action for wrongful discharge in violation of public policy.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Eagleson, J., and Anderson (Carl W.), J.,* concurred.

**BROUSSARD, J.**—I concur.

I agree with the majority that an employee may bring a common law action for injuries arising from sexual discrimination or harassment without exhausting remedies under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.). However, for the reasons stated in my dissenting opinion in *Peralta Community College Dist.* v. *Fair Employment & Housing Com., ante,* page 40 [276 Cal.Rptr. 114, 801 P.2d 357], I disagree with language in the majority opinion asserting that the Fair Employment and

---

*Presiding Justice, Court of Appeal, First Appellate District, Division Four, assigned by the Chairperson of the Judicial Council.

Housing Commission lacks authority to award compensatory damages for such injuries.

Kennard, J., concurred.