[Civ. No. 58826. Second Dist., Div. Three. Dec. 30, 1980.]

TERRY G. HOLDER, Plaintiff and Appellant, v.
CALIFORNIA PARALYZED VETERANS ASSOCIATION,
Defendant and Respondent.

COUNSEL

Perona & Langer, Major Alan Langer and Ronald Beck for Plaintiff and Appellant.

Stephen F. Rohde for Defendant and Respondent.

OPINION

**POTTER, Acting P. J.**—Plaintiff Terry G. Holder appeals from the judgment dismissing his action against defendant California Paralyzed Veterans Association (hereinafter CPVA) after CPVA's demurrer to the first amended complaint was sustained without leave to amend.

The first amended complaint (hereinafter complaint) sought damages for intentional and negligent infliction of emotional distress pursuant to an alleged conspiracy. Plaintiff's distress allegedly was caused by his expulsion from membership in the CPVA. According to the complaint, CPVA is an unincorporated association of which plaintiff was a member and was treasurer prior to his expulsion. The expulsion resulted from the purported trial of plaintiff "before the general membership of the CPVA on charges of misappropriating funds from the CPVA, creating false expense reports, and defrauding the CPVA." Two specifications of the charges were set forth in the complaint as follows: "Specification 1. In that Terry G. Holder, contrary to the entrusted duties of the office of CPVA treasurer, did, on one August 1977, submit expenditures without explanation by Mr. Holder for mileage, meals and lodgings as indicated on CPVA invoice No. 758, in the total sum of . . . $412.06.

"Specification 2. In that Mr. Terry G. Holder, contrary to budget procedures as stated in PVA[1] and CPVA Administrative Guides and contrary to the entrusted duties of the office of CPVA treasurer, did, on 18 February 1977, approve without authority and without explanation, expenditures by Mr. Holder, Mr. Madsen, Mr. DeGeorge and Mr. Dwyer, expenses for entertainment as indicated on check No. 4929, in the total sum of. . . $1,219.04."

According to the complaint, "plaintiff was not afforded a fair trial" on these charges because the procedure followed "violated plaintiff's basic and fundamental guarantees of procedural due process." The facts supporting these conclusions as detailed in the complaint were that prior to the date of the hearing, plaintiff was notified that he would be tried "on specification 1 only." Plaintiff employed counsel and assembled material to meet this charge, but "immediately prior to the beginning of said hearing," plaintiff was informed that defendant would proceed on specification 2. Other procedural deficiencies were detailed as follows: "At the beginning and during the aforesaid hearing defendants denied plaintiff his basic guarantees of procedural due process, which included, but is not limited to, the following: Defendants denied plaintiff the right to effective counsel after he had specifically requested that his counsel be present, and in addition, would not permit plaintiff to confer with counsel who was waiting outside the hearing chamber. Moreover, the purported 'trial' of plaintiff was not transcribed by a certified reporter, and more importantly, plaintiff was not given the opportunity to inspect and review documentary evidence introduced against him, but was instructed that copies would be provided 'later.' In addition, defendants would not permit witnesses to swear under oath that they were telling the truth and plaintiff was not permitted to conduct an effective voir dire of the members of the committee."

The complaint further stated that "[a]ll of the above malicious and unlawful acts committed by defendants were done with the knowledge that plaintiff was not guilty but. . .to insure a guilty finding and expel plaintiff from membership in the CPVA," and that "[d]efendants' conduct was intentional and malicious and done for the purpose of causing plaintiff to suffer severe and extreme emotional and physical distress, humiliation and mental anguish."

---

[1]PVA is CPVA's parent national organization.

Defendant's demurrer attacked the sufficiency of the complaint on several grounds. The trial court, however, specifically limited its ruling sustaining the demurrer to the first ground which was that the action was premature because "a tort action for damages arising out of a quasi-judicial proceeding must be preceded by a successful mandamus action overturning the decision of the quasi-judicial body."[2]

In support of its claim that the action was premature, defendant asked the court to take judicial notice of the complaint in a prior proceeding brought by plaintiff against defendant in which plaintiff sought: (1) declaratory relief voiding (a) the "PVA and CPVA administrative guides" which plaintiff was charged with violating and (b) Roberts' Rules of Order as a procedure "to discipline officers or members of a non-profit corporation," and (2) an injunction against continuing the investigation of plaintiff's alleged misconduct pursuant thereto. The court was furnished a copy of the complaint in the former action with its exhibits. This complaint detailed the appointment of a special investigating committee which filed lengthy reports charging violations of the procedures set forth in the administrative guides, including 19 specifications against plaintiff. Defendant also furnished the court a copy of a dismissal of the prior action which was filed after a preliminary injunction was denied.

Also before the court was the original complaint in the within action. It was amended before a ruling upon defendant's earlier demurrer raising the same first ground. In the original complaint plaintiff alleged that: (1) "defendants, and each of them, purported to try plaintiff before the general membership of the CPVA without affording him a fair trial..."; (2) plaintiff "evoked and exhausted all administrative remedies" since "[t]here is no provision for appeal from the action of the association," and (3) "defendants, and each of them, had a legal duty to exercise due care to conduct CPVA administrative hearings in a manner that would not proximately cause any member in the CPVA or any member before the CPVA as an accused in an administrative or quasi-judicial hearing, humiliation, mental anguish and severe emotional and physical distress."

---

[2]Defendant's memorandum in support of the demurrer states that the other grounds are "for the record and to preserve these points in any subsequent litigation," and its respondent's brief concedes that "the remaining grounds asserted in CPVA's demurrer ...are therefore not before this court." Accordingly, we will not lengthen this opinion by a description of these alternative grounds.

During the argument on the demurrer, the court explored plaintiff's position with his counsel. This colloquy developed that though counsel was not saying that his "client didn't participate in a hearing," "this unfair hearing...amounts to no hearing at all." Noting that defendant was taking "exception to the way the hearing was handled," the court sustained the demurrer without leave to amend upon the ground that the action was premature under the rule stated by our Supreme Court in *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410], and that plaintiff "should have brought a mandamus action."

### Contentions

Plaintiff contends that his action is not rendered premature by *Westlake* because: (1) he has alleged ulterior motivation for the entire expulsion proceedings; (2) the procedure at defendant's expulsion "hearing" was so lacking in fundamental due process that it fails to qualify as "quasi-judicial" procedure requiring review by mandamus; and (3) *Westlake* applies only to exclusions or dismissals by hospitals.

Defendant contends, to the contrary, that plaintiff's complaint is rendered premature by *Westlake* which also involved alleged intentional and malicious misuse of quasi-judicial procedures for ulterior purposes and a claim that such procedure did not comply with general principles of fairness.

### Discussion

The decision in *Westlake* is controlling and requires affirmance of the trial court judgment. In that case, Dr. Kaiman was plaintiff. She had suffered revocation of her staff privileges at Westlake Community Hospital and had failed to achieve staff status at another hospital (Los Robles Hospital), all allegedly pursuant to a conspiracy to intentionally and unlawfully interfere with her right to practice medicine, to restrain competition and to intentionally inflict emotional distress upon her. Like plaintiff herein, Kaiman "did not seek either reinstatement to staff privileges at Westlake or the admission to staff privileges at Los Robles." (17 Cal.3d at p. 470.)

Though both Westlake and Los Robles were named as defendants along with individual members of boards and committees, only the

Westlake defendants had appeared. Their motion for summary judgment was denied. The affidavits in behalf of the Westlake defendants showed that the revocation of Kaiman's staff privileges at Westlake came about as the result of the hospital's credentials committee recommending such revocation after which Dr. Kaiman was notified of the decision and of her right to request a hearing before a judicial review committee. Thereafter, a hearing took place which the court described as follows (*id.*, at pp. 471-472): "At the hearing, counsel appeared and represented both the executive committee of the hospital and Dr. Kaiman, both parties called witnesses and introduced documentary evidence, and the entire proceedings were transcribed by certified reporters; the hearing lasted approximately five hours. On March 20, 1974, the hospital informed Dr. Kaiman that the judicial review committee had determined that her staff privileges should be revoked, advising her of her right to appeal the decision to the hospital's board of directors at a meeting scheduled for that purpose on March 27, 1974. Dr. Kaiman appeared before the board of directors on March 27 and presented her objections to the decision of the judicial review committee; the board of directors affirmed the decision of the judicial review committee and so notified Dr. Kaiman."

The affidavits with respect to Kaiman's application for staff membership at Los Robles were to the effect that her application had been reviewed by the Los Robles medical committee which contacted her references and received additional information from a local physician with whom she had previously practiced (raising doubts as to her professional competency). Dr. Kaiman was simply advised that her application had been denied. As the court stated (*id.*, at p. 472): "[T]he Los Robles affidavits do not indicate that the hospital ever informed Dr. Kaiman of the reason for her rejection or that she had any right to obtain a quasi-judicial review of the decision within the hospital hierarchy...."

Westlake's petition for a writ of mandate was denied in part and granted in part by our Supreme Court. It was denied insofar as it sought to require granting the summary judgment as to the damage claimed with respect to the denial of staff privileges at Los Robles; it was granted so as to require a summary judgment dismissing the claim as to the damage resulting from the revocation of Kaiman's staff privileges at Westlake.

Kaiman's claim with respect to the Westlake revocation was found to be "premature" because she "did not challenge the revocation through a

mandamus proceeding." (17 Cal.3d at p. 485.) The court created this requirement by analogy to the comparable requirement in malicious prosecution actions based upon the initiation of an "ordinary 'public' administrative proceeding" that such proceeding be thus favorably terminated. Though acknowledging the obvious distinctions "between public and private administrative proceedings," the court concluded (*id.*, at pp. 483-484): "[T]he general policy underlying the 'favorable termination' requirement in malicious prosecution actions applies in the present context. As in a malicious prosecution action, plaintiff's position rests on a contention that defendants intentionally and maliciously misused a quasi-judicial procedure in order to injure her; such a claim is necessarily premised on an assertion that the hospital's decision to revoke plaintiff's privileges was itself erroneous and unjustified. Although a quasi-judicial decision reached by a tribunal of a private association may not be entitled to exactly the same measure of respect as a similar decision of a duly constituted public agency (see Summers, *Legal Limitations in Union Discipline* (1951) 64 Harv.L.Rev. 1049, 1086), we believe that so long as such a quasi-judicial decision is not set aside through appropriate review procedures the decision has the effect of establishing the propriety of the hospital's action. (Cf. *Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 731-733 [13 Cal.Rptr. 104, 361 P.2d 712].) Accordingly, we conclude that plaintiff must first succeed in overturning the quasi-judicial action before pursuing her tort claim against defendants.

"In our view, the above requirement accords a proper respect to an association's quasi-judicial procedure, precluding an aggrieved party from circumventing the established avenue of mandamus review. In addition, this result will simplify court procedures by providing a uniform practice of judicial, rather than jury, review of quasi-judicial administrative decisions. (Cf. Code Civ. Proc., § 1094.5; *Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 637 [234 P.2d 981].)"

The court then pointed out the appropriateness of applying the principle above stated to the acts of quasi-judicial tribunals of hospital associations who perform "often without remuneration, the difficult, time-consuming and socially important task of policing medical personnel," but "remain ultimately subject to suit," being granted only "a conditional privilege" by Civil Code section 43.7. (17 Cal.3d at p. 484.)

Having set forth the holding in *Westlake*, we must further examine it in light of plaintiff's three contentions urging inapplicability of its re-

quirement of "'favorable termination'" (*id.*, at p. 483) through "the established avenue of mandamus review" (*id.*, at p. 484).

■ Plaintiff's first such contention is that his allegations of ulterior motive (intentionally to cause "plaintiff to suffer severe and extreme emotional and physical distress, humiliation and mental anguish") make *Westlake* inapplicable. There is no merit to this contention. The plaintiff in *Westlake* was making the same contention; Kaiman also claimed that the revocation of her privileges was pursuant to a conspiracy, one of the objects of which was "intentional infliction of emotional distress." (17 Cal.3d at p. 470.) Further, the court, in stating the contention of defendant which it approved, described such contention as follows (*id.*, at p. 482): "Defendants assert that before plaintiff may maintain a tort action against either the hospital or its board or committee members *on the ground that the revocation of her hospital privileges was maliciously motivated*, she must first successfully attack the quasi-judicial revocation decision in a mandamus proceeding." (Italics added.)

Indeed, the court pointed out that in such a case "plaintiff's position rests on a contention that defendants intentionally and maliciously misused a quasi-judicial procedure in order to injure her ...." (*Id.*, at p. 484.) It was on this basis that the analogy to malicious prosecution was drawn, and the "'favorable termination' requirement in malicious prosecution actions" (*id.*, at pp. 483-484) made applicable. It is thus apparent that a claim of ulterior motivation is what triggers the requirement; certainly it does not make it inapplicable.

■ Plaintiff's second contention is that his allegations of procedural deficiencies constituting denial of fundamental due process make *Westlake's* "'favorable termination' requirement" inapplicable.

*Westlake* does hold that "'private' administrative proceedings" undertaken "without notice or hearing of any kind" (*id.*, at p. 483, fn. 8) do not invoke the requirement for review by mandamus. The cases cited in footnote 8, *supra*, involve precisely that situation. The subjects of the action taken were given no prior notification of charges and no opportunity to participate in any kind of hearing. That is not the situation alleged by plaintiff in this case. His prior pleading shows that he was in fact served with 19 specifications of alleged violations of defendant's administrative guide preferred by a special committee and that he actually attended and participated in the purported hearing.

Plaintiff, of course, claims that the hearing procedure was so defective as to deny him fundamental due process, but such a procedural defect is a common ground for issuance of a writ of mandate invalidating a quasi-judicial decision. The opinion in *Westlake* contemplates such a basis for a favorable termination of a mandate proceeding, by saying (*id.*, at p. 484): "[O]nce a court determines in a mandamus proceeding that an association's quasi-judicial decision cannot stand, either because of a substantive *or procedural defect*, the prevailing party is entitled to initiate a tort action . . . ." (Italics added.)

The existence of such an issue makes even more appropriate the "uniform practice of judicial, rather than jury, review of quasi-judicial administrative decisions" (17 Cal.3d at p. 484), the preservation of which appears to be a major basis for the *Westlake* doctrine. Compare *Hackethal* v. *Loma Linda Community Hosp. Corp.* (1979) 91 Cal.App. 3d 59, 62-63 [153 Cal.Rptr. 783], where "procedural shortcomings" so serious that the trial court found "plaintiff had in effect received no hearing at all on the merits of the charges," were held not to justify departure from normal mandamus procedures (remand for further administrative hearing).

Plaintiffs pleading of procedural defects denying fundamental due process does not, therefore, take the case out of the operation of *Westlake*.

■ Finally, plaintiff contends that *Westlake* should be construed to apply only to "exclusions or dismissals undertaken by hospitals." (17 Cal.3d at p. 483, fn. 8.) We do not so construe it. Though the opinion takes occasion to point out facts making it appropriate to apply the rule to quasi-judicial determinations of hospitals, it is apparent that the court is discussing a general principle governing attacks upon any "quasi-judicial decision reached by a tribunal of a private association." (*Id.*, at p. 484.) It was concerned with a uniform practice for the "review of quasi-judicial administrative decisions." (*Ibid.*) The court described the issue as follows (*id.*, at pp. 482-483): "[T]he narrow issue of whether an individual who has been expelled or excluded from membership in an association after being afforded a quasi-judicial proceeding may bring an immediate tort action for damages or must first succeed in setting aside the association's decision in a separate mandamus action. [Fn. omitted.]"

It is not the province of this intermediate appellate court to hold, as plaintiff urges, that our Supreme Court's resolution of that issue "should only apply to its facts."

The fact that the opinion justifies the application of the principle in the context of hospital decisions "policing medical personnel" (*id.*, at p. 484) in light of stated policy considerations does not suggest that that is the only context in which the rule applies, only that the result of its application should not violate such policy. The policy factors referred to, moreover, have like application to unincorporated associations generally. They generally have quasi-judicial bodies acting "often without remuneration" who have no absolute privilege in respect of their important task of protecting the association from the acts of members or officers inimical to their objectives. We, therefore, see no reason to accord less respect to the quasi-judicial decisions of a voluntary association of veterans than to such decisions of a hospital association. Both should establish the propriety of the action taken until overturned by appropriate mandamus proceedings.

The judgment is affirmed.

Cobey, J., and Allport, J., concurred.

A petition for a rehearing was denied January 19, 1981, and appellant's petition for a hearing by the Supreme Court was denied March 25, 1981. Newman, J., was of the opinion that the petition should be granted.