[No. E005480. Fourth Dist., Div. Two. Feb 17, 1989.]

WILLIAM YOUNGBLOOD et al., Plaintiffs and Respondents, v. TERRY WILCOX et al., Defendants and Appellants.

**COUNSEL**

Quinn & Emanuel, David W. Quinto and Eric Emanuel for Defendants and Appellants.

Michael Zitomer for Plaintiffs and Respondents.

**OPINION**

**DABNEY, J.**—Defendants Terry Wilcox, Mission Hills Country Club, Mission Hills Company, and Landmark Land Company, Inc. (collectively, Mission Hills) appeal from entry of a preliminary injunction restraining defendants from interfering with plaintiffs William and Henrietta Youngblood's use and enjoyment of the benefits of a lifetime membership in the Mission Hills Country Club (Club).

### FACTS

The Youngbloods filed a complaint for breach of contract, bad faith breach of contract, intentional infliction of emotional distress and for preliminary and permanent injunction. The Youngbloods alleged that they purchased a residence in the Club's development in the 1970's and later purchased a regular membership in the Club, which allowed them to use the golf and tennis facilities at the development. In 1981, when the Club began offering lifetime memberships, the Youngbloods converted their regular membership to a lifetime membership upon payment of an additional fee.

The complaint further alleged that William Youngblood served as president of the Phase Three Mission Hills Golf Course Villas Association. In his duties as president of that association, William participated in negotiations between the various homeowners' associations and Mission Hills regarding the responsibility for guard gates serving the community. On September 18, 1987, defendant Terry Wilcox, the president of the Club, requested a meeting with William to discuss the guard gate controversy. At the meeting, Wilcox made certain demands. William declined to submit to

those demands, believing that he could not do so in proper exercise of his duties as president of the homeowners' association.

On September 19, 1987, Wilcox sent a written notification to the Youngbloods terminating their membership in the Club. The Youngbloods requested reinstatement of their previous regular membership pending resolution of the propriety of their expulsion; Mission Hills denied the request. In their complaint, the Youngbloods alleged that their termination was in retaliation for William's proper and lawful activities as president of the homeowners' association.

The court issued an order to Mission Hills to show cause why it should not be preliminarily enjoined from interfering with the Youngbloods' membership rights. Mission Hills filed points and authorities, declarations, and excerpts from William Youngblood's deposition in opposition to the request for preliminary injunction. Following a hearing, the trial court issued a preliminary injunction restraining Mission Hills from interfering with the Youngbloods' rights as lifetime members of the Club.

## ANALYSIS

 The trial court's exercise of discretion in ruling on an application for preliminary injunction will not be disturbed on appeal absent a showing that the trial court abused its discretion. (*Cohen* v. *Board of Supervisors* (1986) 178 Cal.App.3d 447, 452 [225 Cal.Rptr. 114].)[1] Trial courts evaluate two interrelated factors in deciding whether to issue preliminary injunctions. First, the court considers whether the plaintiff is likely to prevail on the merits. Second, the court weighs the interim harm to the plaintiff if the injunction is denied with the harm to the defendant if the injunction is issued. (*Cohen, supra,* 178 Cal.App.3d at p. 452.) The grant of a preliminary injunction does not determine any of the merits of the controversy. (*Baypoint Mortgage Corp.* v. *Crest Premium Real Estate etc. Trust* (1985) 168 Cal.App.3d 818, 823 [214 Cal.Rptr. 531].) Nor does it require a finding that the party seeking the preliminary injunction will necessarily prevail on the merits. (*Id.,* at p. 824.) "[W]e as the

---

[1] Mission Hills asserts that the injunction granted in this case was mandatory rather than prohibitory, because the order allows the Youngbloods to continue using Club facilities. Mission Hills argues that when a mandatory injunction is requested, the plaintiff must show urgency and the prospect of irreparable injury. (*Alvarez* v. *Eden Township Hospital Dist.* (1961) 191 Cal.App.2d 309, 312 [12 Cal.Rptr. 661]; *Bo Kay Chan* v. *Gerdon Land Co.* (1951) 103 Cal.App.2d 724, 728 [230 P.2d 1].) However, the premise of the complaint was that the Youngbloods were lifetime members of the Club, and that Mission Hills acted improperly in preventing them from exercising their rights as members. An injunction may have incidental mandatory aspects and still be deemed prohibitory. (*Jaynes* v. *Weickman* (1921) 51 Cal.App. 696, 699 [197 P. 672].) We conclude that the injunction in this case was prohibitory.

reviewing court must merely determine whether the trial court 'exceeded the bounds of reason' in determining [plaintiff] has a 'reasonable probability of prevailing on the merits' and that the 'balance of hardships' favors [plaintiff]. We can reverse the order only if appellant demonstrates an abuse of discretion in resolving these two issues. [Citation.]" (*Ibid.*)

*Likelihood of Prevailing on the Merits.* Mission Hills claims that the Youngbloods did not establish the probability that they will prevail on the merits of their claims at trial. In the Youngbloods' points and authorities in support of the order to show cause, the Youngbloods relied principally on the case of *Nyman* v. *The Desert Club* (1952) 109 Cal.App.2d 63 [240 P.2d 37].) In *Nyman,* members of a country club filed suit against the club for, among other things, a declaration of rights, damages and injunctive relief. The trial court issued a preliminary injunction which restrained the club from interfering with the full use and enjoyment of the club facilities pending the determination of the case on the merits. The injunction was upheld on appeal as a proper exercise of the trial court's discretion.

The *Nyman* plaintiffs' claims were based upon their expulsion from life membership in the country club without cause, although they had agreed to be bound by club rules which provided, " 'Notwithstanding any other rules herein, concerning the right of the Club to terminate membership, the Club reserves the right to terminate a membership if deemed by it to be for the best interests of the Club.' " (109 Cal.App.2d at p. 65.) The *Nyman* plaintiffs relied on a long line of cases which hold that club members have a personal right to enjoy club facilities for the life of the club, and may not be expelled without cause and/or proper notice and hearing.

The court in *Curran* v. *Mount Diablo Council of the Boy Scouts* (1983) 147 Cal.App.3d 712 [195 Cal.Rptr. 325, 38 A.L.R.4th 607] reaffirmed those common law protections available to members of private associations. The court explained, "Under common law, relief was afforded to any individual expelled from a private association who could demonstrate (1) that the society's rules or proceedings were contrary to 'natural justice,' (2) that the society had not followed its own procedures, or (3) that the expulsion was maliciously motivated. [Citations.]

"This common law principle authorizing judicial review of expulsions from associations became part of California law before the turn of the century. [Citation.] Since then, this common law principle has been reiterated in an unbroken line of California decisions. [Citations.]

"Taken together, these decisions establish that the expulsion of a person from membership in a private unincorporated association is deemed 'arbi-

trary' and in violation of the common law right of fair procedure when the expulsion is substantively unreasonable, internally irregular, or procedurally unfair. [Citation.] Procedural fairness requires 'adequate notice of the "charges" . . . [and] a reasonable opportunity to respond.' [Citation.] Furthermore, an expulsion cannot properly rest on a rule which is substantively capricious or contrary to public policy. [Citation.]" (147 Cal.App.3d at p. 720.)

The *Curran* court described the two-step analysis which courts apply in determining whether an expulsion was arbitrary. The court first determines if the procedure followed by the association is fair. Second, the court determines whether the expulsion rests upon a rule which is "substantively capricious or contrary to public policy." (147 Cal.App.3d at p. 720.)

In *Curran,* the defendant contended that these common law protections apply only when the plaintiff was divested of a vested right in specific property. The court noted that in *Ezekial* v. *Winkley* (1977) 20 Cal.3d 267 [142 Cal.Rptr. 418, 572 P.2d 32] the California Supreme Court gave these cases a broader construction. The *Ezekial* court stated: "The underlying theme of these decisions, variously stated, is that *membership in an association, with its associated privileges, once attained, is a valuable interest which cannot be arbitrarily withdrawn.* Thus, they comport with the broader principle that one on whom an important benefit or privilege has already been conferred may enjoy legal protections not available to an initial applicant for the same benefit." (*Id.,* at p. 273, italics added.)

Mission Hills contends that *Curran* may be distinguished because the court's decision also rested on the basis that the expelling organization was a public accommodation and business establishment under the California Unruh Act. However, the court in *Curran,* ruling on the trial court's decision to sustain a demurrer without leave to amend, determined that the plaintiff had pleaded valid claims both for wrongful expulsion and for violation of the Unruh Act.

■ Mission Hills also argues that the authorities on which the Youngbloods rely stand for the proposition that only expulsions from organizations which have the power to foreclose a person's participation in a trade or profession are subject to fair procedure requirements. In our view, the *Curran* and *Ezekial* decisions prohibit this narrow reading of earlier authorities.

■ Mission Hills next claims that the Youngbloods never pleaded a cause of action for wrongful expulsion and thus the trial court could not reasonably determine that they had a probability of success on the merits of that claim. However, "The subject matter of an action and the issues

involved are determinable from the facts alleged rather than from the title of the pleading . . . ." (*Buxbom* v. *Smith* (1944) 23 Cal.2d 535, 542 [145 P.2d 305].) The pleadings here set forth facts to support a claim for wrongful expulsion.

■ Finally, Mission Hills contends that the Youngbloods' rights were circumscribed by the terms of their membership contract which incorporated provisions of the Club by-laws. The by-laws provided that the Club could terminate memberships at will. However, "In this state, 'a member of an unincorporated association may not be suspended or expelled . . . without charges, notice and a hearing, even though the rules of the association make no provision therefor.' (Citing cases.) (*Ellis* v. *American Federation of Labor,* 48 Cal.App.2d 440, 443-444 . . . .)" (*Swital* v. *Real Estate Commissioner* (1953) 116 Cal.App.2d 677, 679 [254 P.2d 587].) "The requirements of notice, hearing and a fair trial antecedent to expulsion are so fundamental that they are imposed upon an association such as here under discussion even though its own constitution, charter, or rules fail to make such provision. [Citations.]" (*Id.,* at p. 680.)

■ On the basis of the facts alleged in the complaint and in William Youngblood's affidavit in support of the order to show cause, we conclude that it was not "beyond the bounds of reason" for the trial court to determine that the Youngbloods were likely to prevail on the merits at trial. Because we conclude that this theory of relief supports the trial court's exercise of discretion to grant a preliminary injunction, we need not discuss the likelihood that plaintiffs will prevail on each of their other claims.

*Balance of hardships.* Mission Hills next argues that the balance of hardships favors Mission Hills rather than the Youngbloods. Mission Hills claims "the issuance of the injunction causes defendants significant injury, potentially affecting thousands of club memberships in the Coachella Valley and elsewhere." ■■ Mission Hills argues that the grant of the preliminary injunction throws into question the enforceability of all recall provisions in its membership contracts. The prospect of an eventual ruling on the merits invalidating unenforceable provisions of the Club's by-laws is not an "injury" which should prevent a grant of a preliminary injunction. Mission Hills also claims that it is injured by being required to extend credit to the Youngbloods, honor their requests for tee times, and allow them access to club facilities and other services the Club provides for its members.

The Youngbloods contend that denial of a preliminary injunction would deprive them of their social life as a retired couple. The Youngbloods' principal recreation was playing golf at the Club. They would have been

forced to go elsewhere to less convenient and less desirable golf courses to play golf at greater expense, or to wait for an invitation from another member to play golf at Mission Hills. Moreover, without membership in a club, they were foreclosed from playing in tournaments, and the cost of membership at another club would greatly exceed that at Mission Hills. Mission Hills counters that plenty of other golf courses are available in the area, and the Youngbloods can still play at Mission Hills as guests of members. However, Mission Hills ignores the facts that the Youngbloods had to pay greens fees to play at other courses or as guests at the Club and that being dependent on other members for occasional invitations to play at the Club prevented them from enjoying substantial benefits of their life membership.

 Mission Hills next argues that the preliminary injunction should have been barred by laches. The Youngbloods did not file a complaint for eight months after they received notice of their expulsion. Thus, the harms of which they complain could not have been immediate and urgent. We defer to the discretion of the trial court on the timeliness of the Youngbloods' action. William Youngblood testified in his deposition that he did not seek judicial intervention earlier because he hoped that the Club would reconsider its position. We are reluctant to rule as a matter of law that an aggrieved party must act immediately to seek an injunction. In view of the congestion in our courts, we believe such a position would discourage informal resolution of disputes.

Our review is limited to determining whether the trial court abused its discretion in concluding that the balance of hardships favored the grant of a preliminary injunction. We find no abuse of discretion which would justify overturning the trial court's determination.

DISPOSITION

The order granting a preliminary injunction is affirmed.

McDaniel, Acting P. J., and Hollenhorst, J., concurred.

A petition for a rehearing was denied March 6, 1989.