Filed 4/10/15  Dorshow v. Donne CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES E. DOROSHOW, | B249518 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC096561) |
| v. | |
| CHARLES DELLE DONNE et al., | |
| Defendants and Respondents | |

APPEAL from judgment of the Superior Court of Los Angeles County, Maria E. Stratton, Judge.  Reversed.

James E. Doroshow, in pro. per., for Plaintiff and Appellant.

Lightgabler LLP, Jonathan Fraser Light and Glenn J. Dickinson for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiff James Doroshow appeals from a summary judgment in favor of Defendants Charles Delle Donne et al. Defendants are individual members of a private country club (the Club), who served on the Club's board of directors and/or rules committee. Plaintiff sued Defendants for defamation and damages allegedly caused by his expulsion from the Club.

The trial court granted Defendants' motion for summary judgment based largely on the finding that the process for expelling Plaintiff from the Club "does not have to be perfect; it has to be fair and the court finds that it was." Because the court's finding purports to resolve disputed issues of material fact, it cannot support summary judgment. We therefore reverse.

## FACTS[1] AND PROCEDURAL BACKGROUND

Plaintiff joined the Club in 2006, after paying $100,000 for a "full equity membership." In his membership application, Plaintiff agreed to abide by the Club's by-laws, rules and regulations.

The Club's by-laws authorize the rules committee to "investigate written complaints concerning the conduct of any member . . . and to take action thereon, and/or report to the Board of Directors its findings and recommendations as to disciplinary action." If a member disagrees with the committee's decision to impose a sanction, the member has the right to appeal the matter to the board of directors. In such cases, the Club's by-laws require the board to conduct "a full hearing de novo as to all relevant matters," after providing at least 10 days written notice to the member.

---

[1]     We draw the undisputed material facts from the parties' separate statements. Where a genuine factual dispute exists, we state the evidence admitted by the trial court in the light most favorable to Plaintiff, as the nonmoving party, in accordance with the standard of review applicable to summary judgments. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

2

While the rules committee has authority to investigate complaints and impose certain penalties, the Club's by-laws vest the board of directors with the sole authority to expel members. Grounds for expulsion include, "A material violation of the By-Laws, House Rules or Policies of the Club" or "Any conduct which is detrimental to the welfare, interest, character or reputation of the Club."

Three alleged rule violations preceded Plaintiff's expulsion from the Club. In July 2011, Plaintiff was involved in an altercation with another member, Drew Grey. The incident began on the golf course and spilled over to the Club patio, where Grey continued to verbally assault Plaintiff and his guests while they dined. After repeatedly asking Grey to stop, Plaintiff momentarily held Grey against a wall with his hand on Grey's chest. Grey filed a complaint with the Club, which the rules committee investigated. After completing its investigation, the committee notified Plaintiff that it would hold a hearing concerning the alleged incident. The committee did not provide Plaintiff with a copy of Grey's written complaint. Plaintiff nevertheless attended the hearing and had an opportunity to present evidence. Both Plaintiff and Grey received 90-day suspensions for the incident.

Following the Grey incident, Defendants took a secret vote to expel Plaintiff from the Club. At the time, Defendants concluded they did not have "a sufficient 'paper record' " to take the desired action. Plaintiff maintains Defendants thereafter conspired to "fabricate reasons" to justify his expulsion.

In December 2011, another member, Michael Prince, submitted a written complaint to the rules committee alleging that Plaintiff intentionally hit a golf ball in his direction, endangering his personal safety. Plaintiff and other members stated Prince hit an errant shot from the fourth fairway onto the fifth fairway where Plaintiff and his group were playing. Before Plaintiff saw Prince, who was several hundred yards away attempting to retrieve his ball, Plaintiff hit a shot from the fifth tee. Though Plaintiff had no intention of endangering Prince, Plaintiff's shot landed near him.

The committee investigated the incident, interviewed witnesses and reviewed Plaintiff's written statement concerning the matter. The committee then notified Plaintiff that it had scheduled a hearing to address Prince's complaint. Plaintiff did not receive a copy of Prince's written complaint in advance of the hearing.

Despite notifying Plaintiff that the hearing would be limited to the Prince incident, the rules committee also questioned Plaintiff concerning his alleged violations of the Club's rules regarding the use of cell phones. Plaintiff explained to the committee that, due to the recent untimely death of his wife, the Club's general manager had given him permission to use his cell phone in emergencies to speak with his children. Notwithstanding the accommodation, and Plaintiff's subsequent showing that the triggering phone call had been from his son concerning a car accident, the committee suspended Plaintiff for a total of 120 days for the Prince incident and cell phone violations.

On January 17, 2012, the rules committee submitted a memorandum to the board of directors detailing the foregoing rule violations and recommending Plaintiff's expulsion from the Club. Plaintiff received a copy of the memorandum and written notice that the board would consider his expulsion at a subsequent hearing. The notice advised Plaintiff that he was "invited to appear [at the hearing] to present any evidence or reasons as to why [he] should not be expelled."

In advance of the hearing, Plaintiff submitted a written statement and petition by several Club members opposing his expulsion. In communications preceding the hearing, Defendants called Plaintiff a "liar" and referred to him as a "poster boy" for cell phone violations, notwithstanding the accommodation the Club's general manager had granted to Plaintiff.

The board of directors held the scheduled hearing on January 26, 2012. The board accepted the rules committee's recommendation and approved Plaintiff's expulsion by a vote of 11-to-0, with one abstention. Following Plaintiff's expulsion, the Club sold his membership at a reduced price and remitted $10,000 to Plaintiff from the proceeds of the sale.

4

Plaintiff's suspensions and ultimate expulsion represented much harsher punishments than those imposed on other Club members for similarly dangerous conduct. For instance, in 2011, Club members David and Martin Hamburger deliberately struck a golf ball at another member's wife. Despite their deliberately dangerous conduct, David Hamburger received only the minimum 30-day suspension and Martin received no punishment. Plaintiff later learned the Hamburgers had made charitable financial contributions to an organization honoring Defendant Donne, and Donne had ensured they received favorable treatment from the other Defendants on the rules committee and board of directors so as not to "hurt his 'friends.' "

On March 26, 2012, Plaintiff filed his initial complaint for conversion, defamation, and intentional infliction of emotional distress. In his operative first amended complaint, Plaintiff added five new causes of action for trespass to personal property, negligence, intentional interference with contractual relations, negligent interference with contractual relations, and negligent infliction of emotional distress. With the exception of the defamation claim, each cause of action alleged Defendants wrongfully expelled Plaintiff from the Club, resulting in damages that included the loss of Plaintiff's $100,000 membership fee. As for defamation, Plaintiff alleged Defendants maliciously called him a "liar" in an effort to harm his reputation with other members of the Club.

The trial court granted Defendants' motion for summary judgment. Relying principally on cases concerning the common law right to fair process (see fn. 10, *post*), the court reasoned that its role in assessing whether Plaintiff was entitled to damages for his expulsion was limited to determining (1) whether "the procedure followed by the association is fair," and (2) whether the "expulsion rests upon a rule which is substantively capricious or contrary to public policy." After reviewing the evidence presented in connection with the motion, and acknowledging several disputed issues raised by Plaintiff concerning the procedural fairness of the expulsion process, the trial court granted summary judgment, concluding: "The process does not have to be perfect; it has to be fair and the court finds that it was."

5

**DISCUSSION**

1.    *The Exhaustion of Judicial Remedies Doctrine and the Effect of Defendants' Waiver*

Before we address the trial court's summary judgment ruling, we must briefly discuss an issue this court raised after Plaintiff filed his appeal from the judgment. Upon reviewing the appellate record, including the parties' separate statements of undisputed facts, we gave the parties notice that this court was considering affirming the summary judgment on a ground not relied upon by the trial court. In accordance with Code of Civil Procedure[2] section 437c, subdivision (m)(2), we invited the parties to file supplemental briefs addressing the following issue:

> "Is [Plaintiff's] complaint for damages in the [instant] action premature under the exhaustion of judicial remedies doctrine announced by the Supreme Court in *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 482-485 [(*Westlake*)]? (See also *Holder v. California Paralyzed Veterans Assn.* (1980) 114 Cal.App.3d 155 [(*Holder*)]; *Gupta v. Stanford University* (2004) 124 Cal.App.4th 407 [(*Gupta*)].)"

In response to our notice, Plaintiff conceded the instant action was premature. Under the exhaustion of judicial remedies doctrine, Plaintiff acknowledged he could not bring an action for damages allegedly caused by his expulsion unless he first obtained a writ of mandate overturning the board of directors' decision.

---

[2]    Subsequent statutory references are to the Code of Civil Procedure, unless otherwise designated.

Notwithstanding Plaintiff's concession, Defendants argued we should not affirm the summary judgment on this alternate basis. Defendants maintained they knowingly waived the doctrine for strategic reasons and that the trial court's stated rationale provided an adequate basis to affirm the summary judgment.[3]

Because it impacts our review of the trial court's summary judgment ruling, we must briefly address the exhaustion of judicial remedies doctrine and the effect of Defendants' waiver. The rule is settled that when a private association reaches the decision to expel a member through a quasi-judicial process, the member may not bring an action for damages caused by the alleged wrongful expulsion, unless the member first succeeds in overturning the association's decision in a mandamus proceeding. (*Westlake, supra,* 17 Cal.3d at p. 484.) This rule, sometimes referred to as the exhaustion of judicial remedies doctrine, accords a proper respect to an association's quasi-judicial procedure, while mandating a uniform practice of judicial, rather than jury, review of quasi-judicial decisions. (*Ibid.*) The consequence of the rule is to recognize that so long as the association's quasi-judicial decision is not set aside through appropriate review procedures, the decision has the effect of establishing the propriety of the association's action, and no claim for damages can be maintained. (*Ibid.*)

In *Westlake*, the plaintiff, Dr. Kaiman, sued Westlake Community Hospital and numerous individual members of the hospital's board and committees after the hospital revoked her staff privileges. (*Westlake, supra,* 17 Cal.3d at p. 469.) Her complaint alleged the revocation stemmed from a malicious conspiracy engineered by the named defendants to destroy her medical practice, restrain competition, and intentionally inflict emotional distress upon her. (*Id.* at p. 470.) Kaiman further alleged that "the revocation of her privileges at Westlake 'was pursued and perfected in a manner contrary to

---

[3]     With their supplemental brief, Defendants filed a motion to augment the record to include an email sent by Plaintiff advising Defendants' counsel of his intention to file a mandamus petition against the Club. Because the email is not a "document filed or lodged in the case in superior court" (Cal. Rules of Court, rule 8.155(a)(1)), we deny the motion to augment.

7

established principles of fairness and justice,' and contrary to Westlake's own bylaws and constitution." (*Ibid.*)

The *Westlake* defendants moved for summary judgment. The supporting affidavits showed the hospital's credentials committee recommended the revocation of Kaiman's staff privileges, after which the hospital notified Kaiman of the decision and of her right to request a hearing before a judicial review committee. (*Westlake, supra,* 17 Cal.3d at pp. 471-472.) Kaiman requested a hearing, at which she called witnesses and introduced documentary evidence. After the hearing, the hospital informed Kaiman that the judicial review committee had determined her staff privileges should be revoked and advised Kaiman of her right to appeal the decision to the hospital's board of directors. Kaiman appeared before the board and presented her objections, after which the board affirmed the judicial review committee's decision. (*Ibid.*)

The *Westlake* defendants asserted the foregoing facts conclusively established the invalidity of Kaiman's suit. Among other things, the defendants argued Kaiman "could not 'collaterally attack' the hospital's revocation decision by a tort action, but could only seek damages after she had succeeded in a 'direct attack' on the quasi-judicial hospital decision in a mandamus proceeding." (*Westlake, supra,* 17 Cal.3d at p. 473.) The trial court denied the defendants' summary judgment motion. (*Ibid.*) The Supreme Court reversed.

The Supreme Court concluded Kaiman's tort action against the hospital and individual board and committee members was "premature" because Kaiman "did not challenge the revocation through a mandamus proceeding." (*Westlake, supra,* 17 Cal.3d at p. 485.) The high court analogized this condition to a comparable requirement in malicious prosecution actions, which can only be maintained after the allegedly maliciously initiated proceeding has terminated favorably for the plaintiff. (*Id.* at p. 483.) Though acknowledging the distinctions "between public and private administrative proceedings," the court concluded that the "general policy underlying the 'favorable termination' requirement in malicious prosecution actions applies in the present context." (*Id.* at pp. 483-484.) The court explained: "As in a malicious prosecution action,

8

plaintiff's position rests on a contention that defendants intentionally and maliciously misused a quasi-judicial procedure in order to injure her; such a claim is necessarily premised on an assertion that the hospital's decision to revoke plaintiff's privileges was itself erroneous and unjustified. Although a quasi-judicial decision reached by a tribunal of a private association may not be entitled to exactly the same measure of respect as a similar decision of a duly constituted public agency [citation], we believe that so long as such a quasi-judicial decision is not set aside through appropriate review procedures the decision has the effect of establishing the propriety of the hospital's action. [Citation.] Accordingly, we conclude that plaintiff must first succeed in overturning the quasi-judicial action before pursuing her tort claim against defendants."[4] (*Id.* at p. 484.)

The *Westlake* court also identified important policy considerations that are advanced by requiring mandamus review before permitting an action for damages: "In our view, the above requirement accords a proper respect to an association's quasi-judicial procedure, precluding an aggrieved party from circumventing the established avenue of mandamus review. In addition, this result will simplify court procedures by providing a uniform practice of judicial, rather than jury, review of quasi-judicial administrative decisions." (*Westlake, supra,* 17 Cal.3d at p. 484, citing § 1094.5.) Finally, the court observed, "this procedure affords a justified measure of protection to

---

[4] The Court of Appeal in *Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235 (*Knickerbocker*) identified a related doctrinal underpinning for the exhaustion of judicial remedies requirement announced in *Westlake*—namely, collateral estoppel. The doctrine of collateral estoppel, the *Knickerbocker* court explained, "bars the relitigating of issues which were previously resolved in an administrative hearing by an agency acting in a judicial capacity." (*Knickerbocker,* at p. 242.) The exhaustion of judicial remedies requirement accords with this principle insofar as it recognizes that "[u]nless the administrative decision is challenged, it binds the parties on the issues litigated and if those issues are fatal to a civil suit, the plaintiff cannot state a viable cause of action." (*Id.* at p. 243.) Our Supreme Court has since likewise recognized that "[e]xhaustion of judicial remedies . . . is necessary to avoid giving binding 'effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing administrative action.' " (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70 (*Johnson*), italics omitted.)

9

the individuals who take on, often without remuneration, the difficult, time-consuming and socially important task of policing medical personnel," yet remain potentially subject to liability should the court determine "in a mandamus proceeding that an association's quasi-judicial decision cannot stand, either because of a substantive or procedural defect."[5] (*Westlake,* at p. 484.)

As Plaintiff implicitly acknowledged in his response to this court's notice, the material undisputed facts in the instant case are on all fours with the facts and reasoning of *Westlake.* In his separate statement of undisputed facts and declaration in opposition to Defendants' summary judgment motion, Plaintiff admitted or did not materially dispute the following: (1) the rules committee notified Plaintiff that other members had filed written complaints concerning his alleged rule violations; (2) the committee interviewed witnesses and investigated the alleged violations; (3) the committee held hearings concerning the alleged violations, at which Plaintiff was allowed to present evidence and explain his conduct; (4) following the investigations and hearings, the committee submitted a memorandum to the Club's board of directors detailing the committee's findings and recommending Plaintiff's expulsion; (5) Plaintiff received a copy of the committee's memorandum and was notified of his opportunity to present evidence and argument at a hearing before the board; (6) Plaintiff submitted a written

---

[5]     This policy rationale is not limited to the hospital privileges at issue in *Westlake.* As the Court of Appeal explained in *Holder, supra,* 114 Cal.App.3d 155, the exhaustion principle is applicable in all contexts in which a private association's quasi-judicial decision is asserted as the basis for a damages action: "The policy factors referred to [in *Westlake*] . . . have like application to unincorporated associations generally. They generally have quasi-judicial bodies acting 'often without remuneration' who have no absolute privilege in respect of their important task of protecting the association from the acts of members or officers inimical to their objectives. We, therefore, see no reason to accord less respect to the quasi-judicial decisions of a voluntary association of veterans than to such decisions of a hospital association. Both should establish the propriety of the action taken until overturned by appropriate mandamus proceedings." (*Holder,* at p. 165; see also *Gupta, supra,* 124 Cal.App.4th at p. 411 [exhaustion of judicial remedies doctrine applies to tort and contract action by student based on disciplinary action taken by private university after evidentiary hearing].)

10

statement and petition by several Club members opposing his expulsion; and, (7) at the noticed hearing, the board voted in favor of expelling Plaintiff from the Club.[6] Because it is undisputed that the vote to expel Plaintiff resulted from a quasi-judicial decision-making process and Plaintiff has not successfully overturned the board's decision in a mandamus action, his suit against Defendants for damages allegedly caused by the expulsion is premature. (*Westlake, supra,* 17 Cal.3d at p. 484.)

Be that as it may, as Defendants argued in their supplemental brief, the exhaustion of judicial remedies doctrine is not jurisdictional and may be waived by parties who are otherwise entitled to its protection. (*Johnson, supra,* 24 Cal.4th at p. 70 [while exhaustion of *administrative* remedies is " 'a jurisdictional prerequisite to resort to the courts[,]' " "[e]xhaustion of *judicial* remedies, on the other hand, is necessary to avoid giving binding 'effect to the administrative agency's decision' "]; *Knickerbocker, supra,* 199 Cal.App.3d at p. 241 [overturning an administrative decision in mandamus action is not a "jurisdictional prerequisite to filing a tort action for damages in all cases"].) In Defendants' supplemental brief and at oral argument, defense counsel emphatically maintained that Defendants had knowingly waived the exhaustion of judicial remedies requirement for strategic reasons. In view of this representation, we will not interpose a defense that Defendants and their counsel have knowingly decided to waive.

---

[6] Though Plaintiff disputed whether the Club conducted the disciplinary proceedings in accordance with fundamental due process, alleged procedural defects do not remove a quasi-judicial decision from the *Westlake* doctrine. (See *Holder, supra,* 114 Cal.App.3d at p. 164 [observing an alleged procedural defect is a common ground for issuing a writ of mandate invalidating a quasi-judicial decision, and *Westlake* identified this as a basis for obtaining favorable termination in a mandamus action].) Indeed, as the *Holder* court explained, the existence of an alleged procedural defect "makes even more appropriate the 'uniform practice of judicial, rather than jury, review of quasi-judicial administrative decisions' [citation], the preservation of which appears to be a major basis for the *Westlake* doctrine." (*Holder,* at p. 164.)

We must nevertheless determine what effect Defendants' waiver has on the instant proceedings. As discussed, the exhaustion of judicial remedies doctrine provides that "unless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions." (*Johnson, supra,* 24 Cal.4th at pp. 69-70, citing *Westlake, supra,* 17 Cal.3d 465.) By requiring a successful challenge to the decision under the standards for obtaining mandamus relief set forth in section 1094.5, the requirement "accord[s] a proper respect to an association's quasi-judicial procedure, precluding an aggrieved party from circumventing the established avenue of mandamus review."[7] (*Westlake, supra,* 17 Cal.3d at p. 484, citing § 1094.5.) It follows that the effect of Defendants' waiver is to forego these protections and permit Plaintiff's damages action to proceed under the tort theories alleged in the complaint, without requiring Plaintiff to first successfully challenge the board's decision against the deferential standard employed in mandamus proceedings (see fn. 7, *ante*). We must therefore review the trial court's decision under the standard applicable to summary judgments in ordinary civil actions.

---

[7]    Under section 1094.5, the superior court's inquiry in determining whether a quasi-judicial decision was proper is limited to "the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (§ 1094.5, subd. (b).) "Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid.*) In a case that does not concern vested rights, like the instant one, "[w]here it is claimed that the findings are not supported by the evidence, . . . abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (*Id.*, subd. (c).) In sum, so long as the quasi-judicial process was fair and the decision was supported by substantial evidence, the decision will not be overturned and, under the exhaustion of judicial remedies doctrine, the plaintiff will be barred from asserting damages claims that conflict with the decision or its implicit findings. (*Westlake, supra,* 17 Cal.3d at p. 484; see, e.g., *Johnson, supra,* 24 Cal.4th at p. 76 ["when, as here, a public employee pursues administrative civil service remedies, receives an adverse finding, and fails to have the finding set aside through judicial review procedures, the adverse finding is binding on discrimination claims under the FEHA"].)

2.	*Plaintiff's Evidence Raised Triable Issues Concerning the Wrongfulness of His Expulsion*

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We " 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar, supra,* 25 Cal.4th at p. 843.) We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

A defendant is entitled to summary judgment upon a showing that the plaintiff's action has no merit. (§ 437c, subd. (a).) The defendant meets this burden with respect to each cause of action by establishing undisputed facts that negate one or more elements of the claim or state a complete defense to the cause of action. (*Id.*, subd. (p)(2); *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487.) Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to the cause of action or defense. (*Aguilar, supra,* 25 Cal.4th at pp. 849, 853.) "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id.* at p. 850.)

13

In moving for summary judgment, Defendants introduced evidence concerning Plaintiff's alleged rule infractions and the quasi-judicial process that culminated in his expulsion. Based on this evidence, Defendants argued the decision to expel Plaintiff was not arbitrary, the process employed was indisputably fair, and Plaintiff could not establish tortious conduct under any theory asserted in the complaint.[8]

Plaintiff opposed the motion with competing evidence challenging the fairness of the process. Among other things, Plaintiff's declaration asserted that he had no opportunity to review the written complaints lodged by Grey or Prince in advance of the disciplinary hearings, nor had he received notice that his alleged cell phone use would be raised at the hearing or incorporated into the rules committee's expulsion recommendation. Plaintiff also disputed the procedural fairness of the hearing that preceded the board of directors' vote to expel him. In that regard, he presented evidence suggesting, among other things, that the board did not review his written response to the rules committee's recommendation before voting for his expulsion.

Plaintiff also introduced evidence to dispute the factual basis for the expulsion. That evidence consisted mainly of his declaration, wherein Plaintiff recounted his version of the events underlying the purported rule infractions. Plaintiff argued the evidence, when viewed in the light most favorable to him as the non-moving party, did not support the committee's findings concerning his alleged rule infractions, nor the board's decision to expel him from the Club based on those supposed infractions.

---

[8] Defendants advanced alternative arguments in moving for summary adjudication of the interference with contract and defamation claims. We address these claims below in the margin. (See fn. 9, *post*.)

14

The trial court granted summary judgment, ruling Plaintiff's claims were deficient because "Defendants' actions were not wrongful."[9] The court predicated its ruling on two erroneous conclusions that cannot be squared with the summary judgment standard.

---

[9] The trial court offered alternative rationales in granting Defendants summary adjudication on Plaintiff's interference with contract and defamation claims. With respect to interference, the court concluded Plaintiff could not maintain a claim for interference with contractual relations because Defendants acted as "agents of the party to the contract, the Club" and "[p]arties to the contract cannot be sued for interference with contractual relations." (See *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.) However, as Plaintiff points out, when the evidence is viewed in the light most favorable to him as the non-moving party, triable issues exist as to whether Defendants were acting in the Club's interest, as its agents, or out of personal malice toward Plaintiff, with the intention to deprive him of his contractual membership interest. (See, e.g., *Huynh v. Vu* (2003) 111 Cal.App.4th 1183, 1198 ["when a manager stood to reap a tangible personal benefit from the principal's breach of contract, so that it is at least reasonably possible that the manager acted out of self-interest rather than in the interest of the principal, the manager should not enjoy the protection of the manager's privilege unless the trier of fact concludes that the manager's *predominant* motive was to benefit the principal"].) For instance, in addition to the evidence contesting the fairness of the proceedings and the factual basis for Defendants' disciplinary actions, Plaintiff introduced evidence suggesting other Club members, such as the Hamburger family, received more lenient punishments for arguably more egregious and dangerous conduct. The evidence suggested this disparate treatment was due in part to friendships such members had with Defendants, as well as charitable financial contributions the Hamburgers made to an organization honoring Defendant Donne.

As for the defamation claim, the trial court concluded there was no evidence of a published written statement constituting libel and any allegedly slanderous statements were "privileged under Civil Code section 47[, subdivision] (c) as they were made during the course of the investigation and decision making process." A communication to a "person interested therein" is privileged under section 47 only if it is made "without malice." (Civ. Code, § 47, subd. (c); *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 723, fn. 7 ["if malice is shown, the privilege is not merely overcome; it never arises in the first instance"].) As Plaintiff argues, the evidence of Defendants' allegedly unfair conduct in the disciplinary proceedings, coupled with their statements that Plaintiff was a "liar" and had violated the Club rules concerning cell phone use, could support a finding of malice in this case. (See *White v. State of California* (1971) 17 Cal.App.3d 621, 629 [" ' "[Malice is] a desire or disposition to injure another founded upon spite or ill will. . . ." . . . Malice may also be implied if the defamatory remarks, although honestly believed to be true, are 'exaggerated, overdrawn, or colored to the detriment of plaintiff, or are not stated fully and fairly with respect to the plaintiff, . . .' "].) Accordingly,

First, with regard to the committee's findings and the board's decision, the trial court stated, "The court is not required to evaluate the merits of a member's expulsion." This is true when a private association's decision collaterally estops the member from relitigating issues adversely decided against him in the underlying quasi-judicial disciplinary proceeding *under the exhaustion of judicial remedies doctrine*. (*Westlake, supra,* 17 Cal.3d at p. 484; *Johnson, supra,* 24 Cal.4th at pp. 69-70; *Knickerbocker, supra,* 199 Cal.App.3d at p. 244.) Where the doctrine's protections are invoked, the court's role in assessing a challenge to the sufficiency of the evidence is limited to determining whether there is any substantial evidence, disputed or undisputed, supporting the adjudicatory body's decision. (§ 1094.5, subd. (c).) But here, Defendants knowingly waived the doctrine's protections. Thus, the board's decision does not collaterally estop Plaintiff from opposing summary judgment on the ground that the committee's findings were erroneous or pretextual in view of the conflicting evidence he introduced concerning his alleged rule infractions.

Second, with regard to the conflicting evidence concerning the procedural fairness of the disciplinary process, the trial court concluded, "The process does not have to be perfect; it has to be fair and the court finds that it was." This finding may well have been correct had the trial court been assessing the validity of the board's decision under the standard set forth in section 1094.5. However, insofar as Plaintiff's tort claims are premised on the theory that Defendants used the disciplinary proceedings as a pretext to wrongfully convert his membership interest and inflict emotional distress, his evidence, when assessed in accordance with the standards governing summary judgment, raises triable issues of fact. As Defendants waived the deferential treatment that would otherwise be accorded to the board's decision (see *Westlake, supra,* 17 Cal.3d at p. 484), the trial court's factual finding concerning the fairness of the disciplinary process was error.

---

disputed issues exist as to whether Defendant's allegedly defamatory statements were privileged under Civil Code section 47, subdivision (c).

16

The trial court's error stems in part from its reliance on the following statement from *Budwin v. American Psychological Assn.* (1994) 24 Cal.App.4th 875, 879: "When a voluntary association disciplines one of its members, '. . . the only function which the courts may perform is to determine whether the association has acted within its powers in good faith, in accordance with its laws and the law of the land.' " This statement is inapposite because it reflects the fact that *Budwin*, unlike the instant case, was a writ of mandate proceeding, as was the Supreme Court case *Budwin* relied upon—*Smith v. Kern County Medical Assn.* (1942) 19 Cal.2d 263. (See *Budwin,* at p. 879 [decision by private, voluntary association of psychologists to censure member properly subject to judicial review by petition for writ of mandate]; *Smith,* at p. 268 [petition for writ of mandate challenging expulsion from medical society properly dismissed where "[t]he procedure provided by the rules of the society was followed and the petitioner was accorded every opportunity to defend himself"]; see also *Smetherham v. Laundry Workers' Union* (1941) 44 Cal.App.2d 131, 135 ["Mandamus is a proper proceeding by means of which to compel the reinstatement to membership of one who has been illegally expelled from a duly organized association"].) The rule stated in *Budwin* is consistent with the deferential treatment accorded to a private association's disciplinary decision in a mandamus action. And, as we have explained, this deferential treatment was a key policy basis for the exhaustion of judicial remedies doctrine announced in *Westlake*. However, in view of Defendants' waiver, the *Budwin* court's statement concerning the court's limited function in a mandamus proceeding has no application to Plaintiff's tort claims in the instant case.

The other cases cited in the trial court's statement of decision address the contours of the common law right to fair procedure and when that right can be invoked to set aside an expulsion or other disciplinary action by a private association. (See *Potvin v. Metro. Life Ins. Co.* (2000) 22 Cal.4th 1060 (*Potvin*); *Pinsker v. Pac. Coast Soc. of Orthodontists* (1974) 12 Cal.3d 541 (*Pinsker*); *Kim v. Southern Sierra Council Boy Scouts of America* (2004) 117 Cal.App.4th 743 (*Kim*); *Youngblood v. Wilcox* (1989) 207 Cal.App.3d 1368

17

(*Youngblood*).)[10]  These cases are inapposite.  In view of Defendants' waiver, Plaintiff has no need to invoke the common law right to fair procedure to set aside the board's decision; rather, he can simply proceed with his damages action on the tort theories asserted in his complaint.

<hr>

[10]  Critically, these cases either exclusively concerned whether the right to fair procedure applied to the challenged decision (see, e.g., *Potvin, supra,* 22 Cal.4th at pp. 1071, 1072 [right applies when decision affects "an important, substantial economic interest"]; *Kim, supra,* 117 Cal.App.4th at p. 746 [right does not apply to the decision whether a member of the Boy Scouts should be promoted to the rank of Eagle Scout]), or dealt with a decision that undisputedly had been reached without affording the plaintiff fair process (see, e.g., *Pinsker, supra,* 12 Cal.3d at p. 547 [plaintiff was afforded no opportunity "either to appear in person or submit a written statement on his own behalf" before membership application to orthodontists' society was denied]; *Youngblood, supra,* 207 Cal.App.3d at pp. 1371-1372 [plaintiffs' lifetime membership in country club terminated without notice or opportunity to be heard].)  Thus, while these cases recognized that "when the right to fair procedure applies, the decisionmaking 'must be both substantively rational and procedurally fair' " (*Potvin,* at p. 1066), none considered how the standard should be applied or the deference that should be accorded to the association's decision in adjudicating a challenge based on the common law right to fair procedure.  Our Supreme Court answered that question in *Westlake*, where it held a challenge to an association's quasi-judicial decision based on a "substantive or procedural defect" must be raised in a mandamus action to ensure the decision is accorded the proper deference and to protect the decision-makers charged with the important task of governing private associations.  (*Westlake, supra,* 17 Cal.3d at p. 484; *Holder, supra,* 114 Cal.App.3d at p. 164)

## DISPOSITION

The summary judgment is reversed.  Plaintiff is entitled to costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, Acting P. J.

We concur:

ALDRICH, J.

LAVIN, J. *

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19